No. 25-3259

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

John Ream,
*Appellant*,

v.

United States Department of the Treasury, *et al.*,
*Appellees.*

On Appeal from the United States District Court for the Southern District of
Ohio, Civil Action No. 2:24-cv-00364-EAS-CMV

**Opening Brief of John Ream**

ROBERT ALT
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, OH 43215
(614) 224-4422
robert@buckeyeinstitute.org

PATRICK T. LEWIS
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 861-7096
plewis@bakerlaw.com

ANDREW M. GROSSMAN
KRISTIN A. SHAPIRO
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., NW,
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Counsel for Mr. Ream*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 25-3259                    Case Name: Ream v. Department of the Treasury

Name of counsel:  Andrew M. Grossman

Pursuant to 6th Cir. R. 26.1, John Ream
                                                              *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

---

### CERTIFICATE OF SERVICE

I certify that on                    June 24, 2025                    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Andrew M. Grossman

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# Table of Contents

Statement in Support of Oral Argument ........................................................ ix

Jurisdictional Statement ................................................................. 1

Statement of Issues.................................................................... 1

Statement of the Case................................................................... 2

    A. The Federal Home-Distilling Prohibition ............................................. 3

    B. The Prohibition Prevents Mr. Ream from
       Distilling Whiskey at Home ...................................................... 4

    C. Procedural History.................................................................. 7

Summary of Argument.................................................................. 10

Argument ............................................................................... 12

    I.    Mr. Ream Has Standing to Challenge the Prohibition ..................... 12

        A. Actual Present Harm *or* a Credible Threat of Prosecution Can
          Constitute a Pre-Enforcement Injury in Fact ............................ 13

        B. The Prohibition Causes Mr. Ream Actual Present Harm........... 16

        C. Even if a Credible Threat of Prosecution Were Required, Mr.
          Ream Demonstrated One........................................................ 22

    II.   The Federal Home-Distilling Prohibition is Unconstitutional ......... 32

        A. The Prohibition Is Not Justified by Congress's Commerce
          Clause Power ....................................................................... 33

        B. The Prohibition Is Not Justified by Congress's Tax Power......... 39

Conclusion ............................................................................. 48

## <u>Table of Authorities</u>

**Cases**

*Afroyim v. Rusk,*
    387 U.S. 253 (1967) ................................................................. 45

*Alexis Bailly Vineyard, Inc. v. Harrington,*
    931 F.3d 774 (8th Cir. 2019) ................................................. 27

*Babbitt v. United Farm Workers Nat. Union,*
    442 U.S. 289 (1979) ................................................................. 28

*Bauer v. Shepard,*
    620 F.3d 704 (7th Cir. 2010) ................................................. 29

*Bay Shore Power Co. v. Oxbow Energy Sols., LLC,*
    969 F.3d 660 (6th Cir. 2020) ................................................. 32

*Block v. Canepa,*
    74 F.4th 400 (6th Cir. 2023) .............................................27, 28

*Bond v. United States,*
    572 U.S. 844 (2014) ................................................................. 26

*Caldwell v. Gasper,*
    No. 22-1031, 2022 WL 16629161 (6th Cir. Nov. 1, 2022) ........................ 31

*Carman v. Yellen,*
    112 F.4th 386 (6th Cir. 2024) .............................................16, 17

*Carney v. Adams,*
    592 U.S. 53 (2020) .............................................................19, 25

*Chase Bank USA, N.A. v. City of Cleveland,*
    695 F.3d 548 (6th Cir. 2012) ................................................. 31

*Christian Healthcare Centers, Inc. v. Nessel,*
    117 F.4th 826 (6th Cir. 2024) ............................................... 16

*Clark v. Stone,*
    998 F.3d 287 (6th Cir. 2021) ................................................. 13

*Corbett v. Transp. Sec. Admin.*,
  19 F.4th 478 (D.C. Cir. 2021) ................................................................. 21

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*,
  274 F.3d 377 (6th Cir. 2001) ................................................................. 19

*Diamond Alternative Energy, LLC v. EPA*,
  606 U.S. __, 2025 WL 1716141 (U.S. June 20, 2025) ............................ 17

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ................................................................. 17, 18, 22

*Fed. Election Comm'n v. Akins*,
  524 U.S. 11 (1998) ................................................................................ 21

*Friends of George's, Inc. v. Mulroy*,
  108 F.4th 431 (6th Cir. 2024) ............................................................... 15

*Gonzalez v. Raich*,
  545 U.S. 1 (2005) ................................................................. 1, 11, 33–39

*Helvering v. City Bank Farmers Tr. Co.*,
  296 U.S. 85 (1935) ............................................................................... 40

*Hernandez-Gotay v. United States*,
  985 F.3d 71 (1st Cir. Jan. 14, 2021) ..................................................... 27

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*,
  740 F. Supp. 3d 509 (N.D. Tex. 2024) ............................ 27, 30, 32, 36, 42

*Hollis v. Lynch*,
  827 F.3d 436 (5th Cir. 2016) ................................................................. 18

*In re Cap. Contracting Co.*,
  924 F.3d 890 (6th Cir. 2019) ................................................................. 21

*Jinks v. Richland Cnty., S.C.*,
  538 U.S. 456 (2003) .............................................................................. 40

*Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*,
  927 F.3d 396 (6th Cir. 2019) ................................................................. 13

*Kentucky v. Yellen*,
    54 F.4th 325 (6th Cir. 2022) ............................................................ 14, 15

*Kiser v. Reitz*,
    765 F.3d 601 (6th Cir. 2014) ............................................................ 30, 31

*Kitchen v. Herbert*,
    755 F.3d 1193 (10th Cir. 2014) ............................................................ 19

*Korte v. Sebelius*,
    735 F.3d 654 (7th Cir. 2013) ............................................................ 29

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ............................................................ 19

*License Tax Cases*,
    72 U.S. 462 (1866).............................................................. 46, 47

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...................................................... 12, 17, 23

*Majors v. Abell*,
    317 F.3d 719 (7th Cir. 2003) ............................................................ 29

*Mason v. Adams Cnty. Recorder*,
    901 F.3d 753 (6th Cir. 2018) ............................................................ 21

*McCulloch v. Maryland*,
    4 Wheat. 316 (1819) ............................................................39, 40, 45, 47

*McDonald v. City of Chicago, Ill.*,
    561 U.S. 742 (2010) ............................................................ 21

*McKay v. Federspiel*,
    823 F.3d 862 (6th Cir. 2016) ............................................................15, 29

*Morris v. United States*,
    161 F. 672 (8th Cir. 1908) ............................................................ 46

*Mosley v. Kohl's Dep't Stores, Inc.*,
    942 F.3d 752 (6th Cir. 2019) ............................................................24, 25

*NFIB v. Sebelius*,
567 U.S. 519 (2012) .................................................... 13, 36–38, 43, 45, 48

*Online Merchants Guild v. Cameron*,
995 F.3d 540 (6th Cir. 2021) ........................................ 13, 26–29

*Peoples Rts. Org., Inc. v. City of Columbus*,
152 F.3d 522 (6th Cir. 1998) ................................................. 18

*Printz v. United States*,
521 U.S. 898 (1997) .............................................................. 40

*Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*,
697 F.3d 1192 (9th Cir. 2012) ............................................... 18

*Reynolds v. United States*,
289 F.2d 698 (10th Cir. 1961) ............................................... 29

*Sabri v. United States*,
541 U.S. 600 (2004) .............................................................. 41

*Salazar v. Paramount Glob.*,
133 F.4th 642 (6th Cir. 2025) ............................................... 13

*Sarasota Wine Mkt., LLC v. Schmitt*,
987 F.3d 1171 (8th Cir. 2021) ............................................... 17

*Savage v. Gee*,
665 F.3d 732 (6th Cir. 2012) ................................................. 13

*Shelby Cnty., Ala. v. Holder*,
570 U.S. 529 (2013) .............................................................. 43

*Sonzinsky v. United States*
300 U.S. 506 (1937) .............................................................. 42

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ..................................... 9, 15, 22, 24, 26, 28

*Thomas More L. Ctr. v. Obama*,
651 F.3d 529 (6th Cir. 2011) ................................... 13, 14, 17, 21

v

*Tweed-New Haven Airport Auth. v. Tong*,
   930 F.3d 65 (2d Cir. 2019) ....................................................... 29

*United States v. Allen*,
   86 F.4th 295 (6th Cir. 2023) ..............................................37, 38

*United States v. Comstock*,
   560 U.S. 126 (2010) ................................................................. 40

*United States v. Dahir*,
   275 F. Supp. 83 (D. Minn. 1967) ........................................... 29

*United States v. Dewitt*,
   76 U.S. 41 (1869) .................................................................... 41

*United States v. Kallestad*,
   236 F.3d 225 (5th Cir. 2000) .................................................. 35

*United States v. Lewis*,
   270 F. Supp. 807 (S.D.N.Y. 1967) ......................................... 30

*United States v. Lopez*,
   514 U.S. 549 (1995) ...............................................26, 37, 39, 48

*United States v. Morrison*,
   529 U.S. 598 (2000).............................................37, 39, 40, 45

*United States v. Rife*,
   33 F.4th 838 (6th Cir. 2022) ............................................33, 37

*United States v. Rose*,
   522 F.3d 710 (6th Cir. 2008) .................................................. 35

*United States v. Thomas*,
   216 F. Supp. 942 (N.D. Cal. 1963) ........................................ 30

*United States v. Thompson*,
   361 F.3d 918 (6th Cir. 2004) ............................................41, 42

*United States v. West*,
   328 F.2d 16 (2d Cir. 1964) ..................................................... 29

*United States v. Whitehead*,
424 F.2d 446 (6th Cir. 1970) ................................................. 29

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ............................................... 27

*600 Marshall Ent. Concepts, LLC v. City of Memphis*,
705 F.3d 576 (6th Cir. 2013) ................................................. 17

**Statutory, Regulatory, and Constitutional Authorities**

Revision of Distilled Spirits Plant Regulations,
76 Fed. Reg. 9080 (2011) .................................................3, 30

U.S. Const., amend. X ............................................................. 26

U.S. Const. art. I, § 8, cl. 3 .................................................... 33

U.S. Const. art. I, § 8, cl. 18.................................1, 33, 36, 39

13 Stat. 223 (1864) ................................................................. 46

14 Stat. 98 (1866) ................................................................... 46

26 U.S.C. § 5042 ....................................................................... 4

26 U.S.C. § 5053 ....................................................................... 4

26 U.S.C. § 5171 ..................................................................3, 19

26 U.S.C. § 5178 ..................................................................3, 19

26 U.S.C. § 5179 ..................................................................... 44

26 U.S.C. § 5601 ..................................................................3, 44

27 C.F.R. § 19.51 ..................................................................3, 30

27 C.F.R. § 29.55 ................................................................20, 24

28 U.S.C. § 1291 ....................................................................... 1

28 U.S.C. § 1331 ....................................................................... 1

28 U.S.C. § 1346 ....................................................................... 1

**Other Authorities**

Amy Renee Leiker, *They sold moonshine from their basement; now they're in trouble*, Wichita Eagle (Dec. 7, 2016) ................................... 31

An Impartial Citizen V, Petersburg Va. Gazette, Feb. 28, 1788, *reprinted in* 8 Documentary History of the Ratification of the Constitution 428 (John P. Kaminski & Gaspare J. Saladino eds., 1988) ............................ 48

Bill Lohman, *Is it time to legalize homemade spirits?*, Richmond Times-Dispatch (Feb. 27, 2017) .............................................. 31

Decl. of Robert M. Angelo, Director, Trade Investigations Division, TTB, ECF No. 39-1, *Hobby Distillers Assoc. v. TTB*, Case No. 4:23-cv-1221 (N.D. Tex. Apr. 8, 2024) ................................ 30, 31

Jacob Sullum, Reason, *Feds Take a Sudden Interest in Busing Home Distillers* (July 14, 2014) ....... 30, 31

James Madison, The Report of 1800 ............................................................ 41

Mary Miley Theobald, *When Whiskey Was the King of Drink*, The Colonial Williamsburg Journal (Summer 2008) .................................. 2

Press Release, U.S. Dept. of Justice, Indictment: Couple Operated Moonshine Still in Newton (Dec. 7, 2016) .................. 31

The Federalist No. 29 (Alexander Hamilton) (George W. Carey & James McClellan eds., 2001) .................................. 45

The Federalist No. 48 (J. Madison) ............................................................ 38

TTB, Home Distilling  ................................................................... 4, 30, 32

**<u>Statement in Support of Oral Argument</u>**

Mr. Ream respectfully requests oral argument. This appeal raises substantial questions of first impression regarding the constitutionality of the federal prohibition of home distilling. If the federal government can prohibit individuals from distilling alcohol in their own homes for personal consumption, it can prohibit anything and there are no limits on federal authority. This appeal additionally raises the important question of whether a credible threat of prosecution is the only possible injury in fact that can support a plaintiff's standing to bring a pre-enforcement challenge to a law, and, if so, what circumstances are required to establish a credible threat. Mr. Ream respectfully submits that oral argument would significantly aid in the decisional process.

Dated: June 24, 2025                    */s/ Andrew M. Grossman*
                                                         Andrew M. Grossman

## Jurisdictional Statement

This district court had jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States and 28 U.S.C. § 1346 because the defendants are agencies of the United States or officers thereof acting in their official capacity. This Court has jurisdiction under 28 U.S.C. § 1291 because Mr. Ream appeals a final order and judgment of the district court that disposes of all parties' claims entered on March 20, 2025. Mr. Ream timely filed his notice of appeal on April 8, 2025.

## Statement of Issues

1.      Whether Mr. Ream has standing to challenge the federal home-distilling prohibition, which prohibits him from distilling alcohol in his own home for personal consumption.

2.      Whether the federal home-distilling prohibition is "necessary and proper for carrying into Execution" a federal regulation of interstate commerce that the federal government has yet to identify. U.S. Const. art. I, § 8, cl. 18.

3.      Whether *Gonzales v. Raich*, 545 U.S. 1 (2005), was correctly decided.

4.      Whether the federal home-distilling prohibition, which criminalizes an otherwise taxable activity and thus prevents individuals from paying taxes on that activity, is "necessary and proper for carrying into Execution" the federal tax on distilled spirits. U.S. Const. art. I, § 8, cl. 18.

1

**Statement of the Case**

John Ream is seeking to engage in a hobby that is as American as apple pie, and certainly a lot older: home distilling.[1] Specifically, Mr. Ream intends to distill small quantities of whiskey in his own home solely for his and his wife's personal consumption. He cannot pursue this passion, however, because federal law criminalizes home distilling. The district court held that Mr. Ream lacks standing, reasoning that he raises only a "general complaint[] about how the government conducts its business" and lacks an injury in fact. Order, RE 33, PageID # 284. That is not true. Mr. Ream wants to distill whiskey at home, is able and ready to distill whiskey at home, and has taken every necessary step to distill whiskey that he can short of violating the criminal prohibition, which is the only thing that prevents him from proceeding. He does not merely disagree with the prohibition in the abstract, it directly circumscribes his conduct. The district court even acknowledged Mr. Ream's point that the prohibition subjects him to a "Hobson's choice" in that "[h]e must choose between refraining from home distilling or facing criminal penalties." *Id.* This is a textbook case for standing.

The district court should have entered summary judgment in Mr. Ream's favor. It is a bedrock principle of constitutional law that the federal government is one of limited, enumerated powers. None of those powers permits Congress to criminalize distilling in one's own home for personal consumption. If Con-

---

[1] *See* Mary Miley Theobald, *When Whiskey Was the King of Drink*, The Colonial Williamsburg Journal (Summer 2008).

gress can prohibit home distilling, it can prohibit home bread baking, sewing, gardening, and practically anything else, and federal power knows no limits.

### A.    The Federal Home-Distilling Prohibition

Federal law prohibits individuals from distilling alcohol in their own homes, even if solely for their own personal consumption. Specifically, 26 U.S.C. § 5601(a)(6) imposes severe criminal penalties on any person who "uses, or possesses with intent to use, any still, boiler, or other utensil for the purpose of producing distilled spirits…in any dwelling house, or in any shed, yard, or inclosure connected with such dwelling house (except as authorized under section 5178(a)(1)(C))."[2] Section 5171 further requires every distiller to obtain a license to operate a "distilled spirits plant," and section 5178(a)(1)(C) provides that "[n]o distilled spirits plant for the production of distilled spirits shall be located in any dwelling house." This brief will refer to sections 5601(a)(6) and 5178(a)(1)(C) collectively as the "federal home-distilling prohibition." Penalties for violation of these provisions are fines up to $10,000 or imprisonment up to five years, or both, for each offense. *See* 26 U.S.C. § 5601.

There is no personal-consumption exception to the federal home-distilling prohibition. As the Department of the Treasury's Alcohol Tax and Trade Bureau ("TTB") explained in a 2011 rulemaking, "[a] person may not produce distilled spirits at home for personal use." 27 C.F.R. § 19.51; *see* Revision of Distilled Spirits Plant Regulations, 76 Fed. Reg. 9080 (2011). TTB's current guid-

---

[2] Section 5178(a)(1)(C) grandfathers in certain non-compliant locations not relevant here.

ance, contained on its website, further explains that, "[w]hile individuals of legal drinking age may produce wine or beer at home for personal or family use, Federal law strictly prohibits individuals from producing distilled spirits at home" and that doing so "can expose you to Federal charges for serious offenses and lead to consequences including…criminal penalties" like imprisonment.[3]

The federal home-distilling prohibition sharply contrasts with the treatment of home brewing and home winemaking under federal law. 26 U.S.C. § 5053(e) explicitly authorizes individuals to "produce beer for personal or family use and not for sale" and 26 U.S.C. § 5042(a)(2) does the same for wine.

**B.    The Prohibition Prevents Mr. Ream from Distilling Whiskey at Home**

**1.**    Mr. Ream was raised in Granville, Ohio, and graduated from the University of Cincinnati with a degree in aerospace engineering. Ream Decl., RE 20-1, PageID #142 (¶¶ 2–3).[4] After college, Mr. Ream worked for Boeing in Seattle, until his life took an unexpected turn. *Id.* ¶ 3. Mr. Ream's now-wife, Kristin, gave him a home-brewing kit after the couple became engaged. *Id.* ¶ 4. According to Mr. Ream, "[b]rewing was the perfect combination of art and science, and my engineering brain just totally latched onto it." *Id.* While his first

---

[3] TTB, Home Distilling, https://www.ttb.gov/distilled-spirits/penalties-for-illegal-distilling (last visited June 18, 2025).

[4] The following facts were also alleged in Mr. Ream's complaint, RE 1, PageID # 1. For simplicity, this brief will cite Mr. Ream's declaration, which he filed both in opposition to defendants' motion to dismiss and in support of his cross-motion for summary judgment. *See* Ream Decl., RE 20-1, PageID #142; Ream Decl., RE 21-1, PageID # 184.

few batches were admittedly "not the best," his brewing talent and technique improved through continuous experimentation during his home brewing. *Id.* ¶ 5. Mr. Ream used his engineering background to improve the quality of his beer and the efficiency of the process to the point where he was creating subtle, interesting, and varied types of beer that he believed were competitive with the highest quality craft brews on the market. *Id.*

After nine years of home brewing, Mr. Ream developed an "entrepreneurial itch" to own his own business—his family's American Dream. *Id.* ¶ 6. He returned home to Ohio and launched Trek Brewing Company ("Trek"), which he and Kristin opened to the public in 2018 as a brewery and taproom, serving beer and food. *Id.* ¶ 7. The name was inspired by their passion for the outdoors, and, as Mr. Ream explained, "[s]tarting the brewery is the next step on our adventure. It's our journey, our trek." *Id.*

Mr. Ream started Trek to "be a vehicle for good in the world." *Id.* ¶ 8. Trek hosts different nonprofits each week through its "Trek Together" program, donating 10 percent of its taproom sales to the nonprofits and giving them a platform to highlight their missions. *Id.* Through the Trek Together Community Fund, Trek further supports local organizations. *Id.* Children are also important to Mr. Ream, as he and Kristin have two young sons. Trek is a family-friendly place, with a selection of kids' meals, board games, and a "kids' corner" with a chalk wall and toys. *Id.* ¶ 9. Trek hosts family-friendly events, from gingerbread-house building around the holidays and annual organized runs for charity to weekly trivia. *Id.* Mr. Ream is proud that, through hard work, he has turned his

home-brewing hobby into a community- and family-oriented business that financially supports his own family and many others, too. *Id.* ¶ 10.

2.     Having made brewing his business, Mr. Ream is now pursuing a new passion in his free time, home distilling. Mr. Ream seeks to apply his engineering background and brewing experience to experiment with distilling small quantities of alcohol in his home for his and his wife's personal consumption, like he did during his nine years of home brewing. *Id.* ¶ 11. He favors rye and Bourbon and has set out to distill those liquors. *Id.* Mr. Ream has taken all of the initial steps that he may lawfully take to engage in home distilling. *Id.* ¶ 12. Specifically, he has extensively researched and studied the process of distilling and relevant legal requirements, selected recipes to use as a starting point for his home-distilling, determined that the necessary ingredients for those recipes are readily available, and even decided upon a specific "5-gallon copper pot still being sold for approximately $600 that [he] would purchase for [his] own use at home." *Id*. ¶¶ 12–14. The next step is simply to buy it.

But that is where the prohibition kicks in. Mr. Ream "could not register it as federal law requires, using it would violate the law, and merely possessing an unregistered still or having a still in [his] home is unlawful and could subject [him] to criminal investigation and even prosecution and imprisonment." *Id.* Federal law is the only thing holding Mr. Ream back: if he had the still, he "could begin home distilling almost immediately." *Id.* ¶ 13.

Having researched the legal requirements, Mr. Ream is able and intends to comply with all applicable state and federal laws except the federal home-

distilling prohibition. *Id.* ¶ 14. He will pay all applicable taxes on his home distilling. *Id.* Mr. Ream has always paid his taxes and never had any dispute with the Internal Revenue Service. *Id.* Mr. Ream will not sell the spirits he distills or otherwise offer them to the public. *Id.* ¶ 25. The only other person who will consume the spirits is his wife. *Id.* ¶ 37.

But for the federal home-distilling prohibition, Mr. Ream would be eligible for and obtain all necessary federal licenses to enable him to home distill. *Id.* ¶¶ 12, 14. The prohibition prevents Mr. Ream from obtaining a license to operate a distilled spirits plant, which is necessary to legally distill spirits and even to register and possess a still. *See id.* As a husband, father, and small-business owner with responsibilities to his family, employees, and community, Mr. Ream will not break the law. *Id.* ¶ 15. Mr. Ream is able and ready to home distill and would home distill if the federal home-distilling prohibition were invalidated. *Id.*

### C.    Procedural History

**1.**   On January 30, 2024, Mr. Ream filed the instant lawsuit claiming that the federal home-distilling prohibition exceeds Congress's constitutional authority both as a facial matter and as applied to Mr. Ream's desired conduct of distilling small quantities of alcohol at home solely for his and his wife's personal consumption. Compl., RE 1, PageID # 1. The complaint sought declaratory and injunctive relief against the prohibition. *Id.* at PageID # 8.

**2.**   Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Mot. to Dismiss Mem., RE 13, PageID # 68. Specifically,

defendants argued that Mr. Ream lacks standing (*id.* at PageID # 80–84) and that the prohibition falls within Congress's Commerce Clause authority (*id.* at PageID # 89–92) and taxing power (*id.* at PageID # 85–89).

Mr. Ream filed a response in opposition to defendants' motion to dismiss, Opp. to MTD, RE 21, PageID # 151, and a cross-motion for summary judgment, Summary Judgment Mot., RE 20, PageID # 109. In support of both filings, Mr. Ream submitted the declaration described above, which details how the federal-home distilling prohibition prevents him from distilling in his own home for his personal consumption and describes the steps he has taken to be ready to home distill should he obtain the relief sought in this lawsuit. *See* Ream Decl., RE 20-1, PageID #142; Ream Decl., RE 21-1, PageID # 184.

**3.**     The district court granted defendants' motion to dismiss and denied Mr. Ream's cross-motion for summary judgment. Order, RE 33, PageID # 278.

The district court dismissed the complaint for lack of standing, holding that Mr. Ream lacks an injury in fact. *Id.* at PageID # 282–92. The court rejected Mr. Ream's argument that he is injured by the federal home-distilling prohibition because it prevents him from distilling in his own home for personal consumption. The court grappled with Mr. Ream's argument that the prohibition "directly regulates" his conduct and subjects him to a "Hobson's choice" in that "[h]e must choose between refraining from home distilling or facing criminal penalties." *Id.* at PageID # 284. But the court reasoned that affording standing to "directly regulate[d]" plaintiffs like Mr. Ream "would unlock the courthouse doors to any plaintiff who wishes to use federal courts to

adjudicate their general complaints about how the government conducts its business." *Id.* The court stated that "[a] plaintiff does not have standing simply because she believes a law is unconstitutional or because she has a policy objection to a particular governmental action." *Id.*

The district court proceeded to consider whether the threat of prosecution that Mr. Ream would face if he engaged in home distilling constituted an injury in fact. *Id.* at PageID # 285–92. The court applied *Susan B. Anthony List v. Driehaus*, which held that "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." 573 U.S. 149, 159 (2014) (quotation marks omitted). The court held that Mr. Ream did not satisfy that standard for three reasons.

First, the district court concluded that Mr. Ream's desired conduct was not "arguably affected with a constitutional interest" because he does not have "a legally protected interest in home distilling." Order, RE 33, PageID # 285–87. Second, the court concluded that Mr. Ream has not shown "that he intends to engage in a course of conduct" proscribed by the federal home-distilling prohibition. *Id.* at PageID # 287. Specifically, the court faulted Mr. Ream because he "has not bought a still" and "[e]ven though he states he has a recipe with a list of ingredients that he can 'easily obtain,' he has not bought the ingredients." *Id.* at PageID # 287–88. The court did not address Mr. Ream's argument that buying a still would subject him to a risk of criminal prosecution.

Finally, the court concluded that defendants have not "vigorously" enforced the prohibition. *Id.* at PageID # 291. Consequently, even though "it is *possible* that Mr. Ream could face future prosecution if he places a still in his home," that "possibility of prosecution" did not constitute an injury in fact. *Id.* (quotation marks omitted).

Because the district court dismissed Mr. Ream's complaint for lack of standing, it denied his cross-motion for summary judgment as moot. *Id.* at PageID # 292.

<u>**Summary of Argument**</u>

The district court erred in granting the defendants' motion to dismiss and denying Mr. Ream's cross-motion for summary judgment.

**I.**    Mr. Ream has standing to challenge the federal home-distilling prohibition. The district court incorrectly concluded that the only possible injury in fact that Mr. Ream could suffer is a credible threat of prosecution. This Court's precedent makes clear that a credible threat of prosecution is just one possible injury a plaintiff can suffer, not the *only* possible injury. In this case, the prohibition causes Mr. Ream two current, ongoing injuries in fact. First, the prohibition directly prevents him from distilling small quantities of alcohol in his own home for personal consumption, which is an activity that he wants to do, would do, and is able and ready to do but for the prohibition. Second, the prohibition renders Mr. Ream ineligible for a federal license to operate a distilled spirits plant, which is something he would obtain but for the prohibition, and which is necessary to distill spirits and even to register and legally possess a still. Courts rou-

tinely find standing where, as here, the challenged law directly regulates plaintiffs' conduct or renders them ineligible for a license or permit.

Even if a credible threat of prosecution were required, Mr. Ream established one. Other courts of appeal have held that the existence of a specific statutory prohibition alone is sufficient to establish a credible threat. Even if this Court decided to require more, there is more here: Defendants' guidance explicitly warns individuals like Mr. Ream that they face serious federal charges if they engage in home distilling, and TTB has taken a bevy of enforcement actions—both historically and in recent years—against home distillers. Defendants have also steadfastly refused to disavow enforcement against Mr. Ream.

**II.**    The federal home-distilling prohibition does not fall within Congress's constitutional authority and is therefore invalid. Defendants maintained below that this case is controlled by *Gonzales v. Raich*, 545 U.S. 1 (2005), which upheld a prohibition of the local cultivation and possession of marijuana pursuant to Congress's Commerce Clause authority. But the Supreme Court upheld the law in *Raich* on the ground that it was necessary and proper to make effective Congress's complete prohibition of interstate commerce in marijuana. There is no corresponding prohibition of interstate commerce in distilled spirits here. Indeed, the government has refused to identify *any* congressional regulation of interstate commerce that the federal home-distilling prohibition is necessary to support. To state the obvious, the prohibition cannot be justified as a necessary and proper measure to make effective a congressional regulation of interstate commerce if no such regulation exists.

The federal home-distilling prohibition also cannot be justified as a measure in aid of Congress's taxing power. Far from being plainly adapted to facilitating collection of a federal tax, the prohibition criminalizes an otherwise taxable activity (distilling spirits) and thereby prevents individuals from paying the resulting tax. Nor is it proper for Congress to prohibit individuals from distilling alcohol in their own homes for their own personal consumption. If the taxing power authorizes the federal government to prohibit home distilling, it can wield that power to prohibit everything from home baking to self-employment—none of which is consistent with the limits on federal power established by the Constitution.

## Argument

### I.    Mr. Ream Has Standing to Challenge the Prohibition

The district court erred in determining that Mr. Ream lacks standing to challenge the federal home-distilling prohibition. Mr. Ream readily satisfies the "irreducible constitutional minimum" elements of standing: He has an "injury in fact" (his present inability to home distill or even register a still) with a "causal connection" to the challenged conduct (his inability is due to the prohibition) that is "likely" to be "redressed by a favorable decision" (holding the prohibition invalid will enable him to register and possess a still and home distill). *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks omitted). Like defendants, the district court did not dispute that Mr. Ream satisfied the causation and redressability elements, but it held that he lacks an injury in fact. This Court

reviews that holding de novo. *See Salazar v. Paramount Glob.*, 133 F.4th 642, 646 (6th Cir. 2025).

**A.    Actual Present Harm *or* a Credible Threat of Prosecution Can Constitute a Pre-Enforcement Injury in Fact**

As a threshold matter, the district court incorrectly held that a credible threat of prosecution is the only possible injury in fact that a pre-enforcement plaintiff, like Mr. Ream, can suffer. Order, RE 33, PageID # 282–85. This Court has repeatedly explained that "a plaintiff must show actual present harm **or** a significant possibility of future harm in order to demonstrate the need for pre-enforcement review" of a challenged statute. *Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021) (quotation marks omitted and emphasis added); *Clark v. Stone*, 998 F.3d 287, 294 (6th Cir. 2021) (same); *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (same); *Savage v. Gee*, 665 F.3d 732, 740 (6th Cir. 2012) (same); *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 535 (6th Cir. 2011), abrogated on other grounds by *NFIB v. Sebelius*, 567 U.S. 519 (2012) (same). The district court's decision entirely ignores the first category of injury (actual present harm) and makes hash of the second (significant possibility of future harm).

As this Court explained in *Thomas More Law Center*, "actual present harm" and "significant possibility of future harm" are two distinct "potential theories of injury" in pre-enforcement cases. 651 F.3d at 535 (quotation marks omitted); *see also Savage*, 665 F.3d at 740 (same). An "actual present harm" inflicted by a challenged law creates an "actual present injury." *Thomas More Law Ctr.*, 651

F.3d at 535 (quotation marks omitted). And a "significant possibility of future harm" inflicted by a challenged law creates an "imminent future injury." *Id.* (quotation marks omitted). Establishing either type of harm satisfies the injury in fact element of standing. *See id.* For example, the plaintiffs in *Thomas More Law Center* demonstrated an actual present harm by showing that the "impending requirement to buy medical insurance on the private market has changed their present spending and saving habits." *Id.* at 536; *see Kentucky v. Yellen*, 54 F.4th 325, 342 (6th Cir. 2022) ("[C]ompliance costs are a recognized harm for purposes of Article III."). They also established a significant possibility of future harm based on the impending requirement "to do something" that they maintain "the Constitution prohibits: require that they buy and maintain a minimum amount of medical insurance." *Thomas More Law Ctr.*, 651 F.3d at 536.

The district court's holding that the only possible injury a pre-enforcement plaintiff can suffer is a credible threat of prosecution cannot be reconciled with *Thomas More Law Center*. According to the district court, the Court in *Thomas More Law Center* should not have held that plaintiffs suffered a present injury because the individual mandate required them to change their current conduct, nor that they suffered an imminent future injury because the mandate would soon require them to purchase insurance. Instead, standing apparently should have turned on the hypothetical likelihood that plaintiffs would be prosecuted in a counterfactual future scenario where they violate the individual mandate.

14

The district court cited *Susan B. Anthony List v. Driehaus* in support of its position, but that case merely recognizes that a credible threat of prosecution is *one* way a pre-enforcement plaintiff can establish a future injury in fact. *See also McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (describing the *Susan B. Anthony List* test as relevant to "allegation[s] of future injury"). Specifically, *Susan B. Anthony List* held that "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." 573 U.S. at 159 (quotation marks omitted). Nothing in *Susan B. Anthony List* suggests that a credible threat of prosecution is the *only* injury that a pre-enforcement plaintiff can suffer. To the contrary, in *Kentucky v. Yellen*, this Court held that Tennessee could challenge the tax mandate imposed by the American Rescue Plan Act of 2021 because its current compliance costs imposed an injury in fact, even though the Court separately held that Tennessee did not face a credible threat of prosecution. *See* 54 F.4th at 340–42.

The credible threat of prosecution standard was developed to address a distinct subset of pre-enforcement cases: plaintiffs challenging laws that do not obviously proscribe their conduct. For example, the plaintiffs in *Susan B. Antony List* were challenging a statute that prohibited "false statements" during a political campaign even though they believed their statements were true. 573 U.S. at 151; *see also, e.g.*, *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024) (plaintiff challenged law prohibiting "adult cabaret entertainment" lacking in

"serious literary, artistic, political, or scientific value for a reasonable 17-year-old minor" but maintained its performances had artistic value for minors). Plaintiffs in such cases cannot assert that the law prohibits their conduct, and thus they often rely on the threat of future prosecution from an overzealous prosecutor to establish an injury in fact. *See generally Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 843 (6th Cir. 2024) ("One difficult and recurring issue is determining when the threatened enforcement of a law creates an Article III injury." (quotation marks omitted)).

A credible threat of prosecution does not even occupy the field of potential future injuries that a pre-enforcement plaintiff can assert, much less does it say anything about what "actual present harm" a plaintiff can allege. As the Court explained in *Carman v. Yellen*, its precedent does not "suggest that only a *particular* kind of injury could suffice to create standing" and its "caselaw shows the opposite is true." 112 F.4th 386, 410 (6th Cir. 2024).

## B.   The Prohibition Causes Mr. Ream Actual Present Harm

Mr. Ream has an injury in fact because the federal home-distilling prohibition causes him actual present harm. Specifically, the prohibition directly prevents Mr. Ream from home distilling and it also renders him ineligible to receive a federal license to operate a distilled spirits plant and even register and possess a still. These are both current, ongoing harms suffered by Mr. Ream because of the prohibition.

1.   The federal home-distilling prohibition directly prevents Mr. Ream from home distilling for personal consumption, an activity that he seeks to do,

would do, and is able and ready to do should he obtain the relief he seeks. *See* pp. 6–7, *supra*. The prohibition thereby causes Mr. Ream an ongoing present injury under what this Court has described as the "direct regulation theory of injury." *Carman*, 112 F.4th at 408. The Supreme Court recently explained that plaintiffs challenging "[g]overnment regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024); *see also Diamond Alternative Energy, LLC v. EPA*, 606 U.S. __, 2025 WL 1716141, at *8 (U.S. June 20, 2025) ("When a plaintiff is the 'object' of a government regulation, there should 'ordinarily' be 'little question' that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries." (quoting *Lujan*, 504 U.S. at 561)).

For example, in *Carman*, this Court held that plaintiffs' allegation "that they will be subject to § 6050I and that those forced disclosures will harm them" satisfied the injury in fact requirement. 112 F.4th at 408. And in *Thomas More Law Center,* the Court acknowledged that being forced to buy insurance against one's wishes would constitute an injury in fact. *See* 651 F.3d at 536. Courts likewise routinely find an injury in fact where, as here, a challenged law prohibits plaintiffs from engaging in a desired activity. *See, e.g. 600 Marshall Ent. Concepts, LLC v. City of Memphis*, 705 F.3d 576, 585 (6th Cir. 2013) ("600 Marshall has clearly suffered an injury in fact because it has been prohibited from presenting nude dancing at its facility."); *Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171, 1178 (8th Cir. 2021) (the "injury in fact" "element does not require extended

analysis" where plaintiff "is prohibited from selling, delivering, or shipping wine from its out-of-state inventory to its Missouri customers" because of the challenged law); *Hollis v. Lynch*, 827 F.3d 436, 442 (5th Cir. 2016) (holding that "being barred from possessing a machinegun" constituted an injury in fact); *Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1196–97 (9th Cir. 2012) ("[T]he Forest Service's decision to prohibit motor vehicle use on Forest Roads 13N92 and 14N25G 'directly and adversely' harms Bailey and the Buntings by preventing them from using motor vehicles to access their mining claims."); *see generally All. For Hippocratic Med.*, 602 U.S. at 382 (plaintiffs have standing to challenge "regulations that require *or forbid* some action").

Defendants concede that the federal home-distilling prohibition unambiguously prohibits Mr. Ream from home distilling, and thus it directly requires him to refrain from engaging in activity he wants to do and would do but for the prohibition. Individuals facing such a "Hobson's choice" between obeying a statute that "requires an immediate and significant change" in their intended conduct or violating a statute "with serious penalties attached to noncompliance" are prototypical plaintiffs with standing. *Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998) (quotation marks and citation omitted). Mr. Ream is "allowed to prefer official adjudication to public disobedience" of the prohibition. *Id.* at 530 (quotation marks and citation omitted).

**2.**    Even if more were required (and it is not), the federal home-distilling prohibition inflicts an additional actual present harm on Mr. Ream by rendering him ineligible to receive a federal license to operate a distilled spirits

plant—which is something he could and would obtain but for the prohibition—and to register and lawfully possess a still. *See* Ream Decl., RE 20-1, PageID #142 (¶¶ 12–14).

Plaintiffs have standing to challenge laws that make them ineligible for government licenses and permits. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 528 & n.4 (6th Cir. 2007) (holding that plaintiffs' ineligibility for driver's licenses constituted an injury in fact); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 274 F.3d 377, 390 (6th Cir. 2001) ("Because of the civil disabilities provisions, Pendergrass, and consequently the 822 Corporation, was ineligible to receive an operating license. Accordingly, both parties have standing to challenge those provisions."); *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014) ("We have no doubt that at least four of the plaintiffs possessed standing to sue the Salt Lake County Clerk based on their inability to obtain marriage licenses from the Clerk's office."). Moreover, plaintiffs are not required to submit a formal application prior to challenging a law that would make their application a "futile gesture," so long as they are otherwise "able and ready" to apply. *Carney v. Adams*, 592 U.S. 53, 66 (2020).

The federal home-distilling prohibition renders Mr. Ream ineligible for a federal license to operate a distilled spirits plant, which is necessary to legally distill spirits anywhere and to register and possess a still. 26 U.S.C. § 5171; *id.* § 5178(a)(1)(C). Consistent with the prohibition, TTB has made it crystal clear that it will not issue distilled spirits plant licenses to home distillers. *See* pp. 3–4, *supra*. Mr. Ream cannot purchase and register a still because of the prohibition,

because an approved license is needed to register a still. *See* 27 C.F.R. § 29.55 ("Approval of the [distilled spirits plant] application by the appropriate TTB officer will constitute registration of the still or distilling apparatus."); Ream Decl., RE 20-1, PageID #142 (¶ 12) (Mr. Ream has not bought a still "because [he] could not register it as federal law requires, using it would violate the law, and merely possessing an unregistered still or having a still in [his] home is unlawful."). But for the prohibition, Mr. Ream would be eligible for and would obtain a license to operate a distilled spirits plant, and Mr. Ream is able and ready to obtain a license should he obtain the relief he seeks. Ream Decl., RE 20-1, PageID #142 (¶¶ 12–14). The prohibition therefore inflicts an additional actual present harm on Mr. Ream by preventing him from obtaining a distilled spirits plant license and registration that is required to possess a still.

**3.**    The district court inexplicably reasoned that Mr. Ream was asserting a generalized grievance because he "believes a law is unconstitutional." Order, RE 33, PageID # 285. This mistake led the court to conclude that affording standing to Mr. Ream "would unlock the courthouse doors to any plaintiff who wishes to use federal courts to adjudicate their general complaints about how the government conducts its business." *Id.* But Mr. Ream is not challenging the federal home-distilling prohibition because of an abstract disagreement with the law. Mr. Ream challenges the prohibition because he seeks to home distill and would be doing so right now but for the prohibition. This is "[a] particularized injury [that] affects [Mr. Ream] in a specific way (in contrast to a generalized grievance), and a concrete injury [that] affects [Mr.

Ream] in a real way (in contrast to an abstract grievance)." *In re Cap. Contracting Co.*, 924 F.3d 890, 897 (6th Cir. 2019). It is decidedly not "an undifferentiated, generalized grievance about the conduct of government." *Mason v. Adams Cnty. Recorder,* 901 F.3d 753, 757 (6th Cir. 2018) (quotation marks omitted).

Mr. Ream is just like the plaintiffs in *McDonald v. City of Chicago, Ill.*, who alleged that they "would like to keep handguns in their homes for self-defense but are prohibited from doing so by Chicago's firearms laws." 561 U.S. 742, 750 (2010). To be sure, Chicago's firearms laws applied to all persons in Chicago, and in that sense their grievance was widespread (although certainly not every Chicago resident wanted a firearm, just like not every person who is subject to the prohibition here wants to home distill). But "[t]he fact that other citizens or groups might make the same complaint does not lessen their asserted injury." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998) (cleaned up). Similarly, this Court in *Thomas More Law Center* recognized that plaintiffs had standing to challenge the individual mandate because it required them to buy insurance against their will, and it did not matter that every other person in the country was subject to the same requirement. *See* 651 F.3d at 536.

Where a plaintiff is "directly regulated" by a challenged prohibition, "he is not pursuing a 'generalized grievance' that would undercut his standing." *Corbett v. Transp. Sec. Admin.*, 19 F.4th 478, 484 (D.C. Cir. 2021). "[T]he Supreme Court has made it clear that 'it does not matter how many persons have been injured by a challenged action, so long as the party bringing suit shows that the action injures him in a concrete and personal way.'" *Id.* (cleaned up); *id.*

21

(traveler challenging mask mandate not asserting a "generalized grievance"). By their very nature, plaintiffs challenging laws that directly regulate their conduct present their disputes "in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *All. for Hippocratic Med.*, 602 U.S. at 379 (quotation marks omitted).

Mr. Ream has a "personal stake" in the outcome of this case: if he wins, he will get to home distill, and if he loses, he will not. *Id.* (quotation marks omitted). Because the federal home-distilling prohibition prevents Mr. Ream from engaging in an activity that he wants to do and would do but for the prohibition, and renders him ineligible for a federal license that he would obtain but for the prohibition, his grievance is personal and not generalized.

## C. Even if a Credible Threat of Prosecution Were Required, Mr. Ream Demonstrated One

Even if the district court were right that the only possible injury in fact that pre-enforcement plaintiffs can suffer is a credible threat of prosecution, Mr. Ream has demonstrated a credible threat. A plaintiff has an injury in fact based on a threat of prosecution "where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (quotation marks omitted). Mr. Ream readily satisfies this standard.

**1.** Mr. Ream has "an intention to engage in a course of conduct…proscribed by a statute." *Id.* (quotation marks omitted). Mr. Ream

22

would engage in home distilling but for the federal home-distilling prohibition, which undisputedly proscribes that activity. *See* pp. 3–4, *supra*. The district court nevertheless concluded that Mr. Ream's desire to home distill was just a "some day intention[]" insufficient to "support a finding of…actual or imminent injury." Order, RE 33, PageID # 289 (quoting *Lujan*, 504 U.S. at 564). According to the court, Mr. Ream lacks a "serious intent" to home distill because there are "several additional steps to begin home distilling…that he has not taken." *Id.* at PageID # 287.

Mr. Ream's intention to home distill is not a mere "some day" dream. Mr. Ream's declaration specifically states that he "would engage in home distilling but for the federal home-distilling prohibition" and that he "could begin distilling almost immediately." Ream Decl., RE 20-1, PageID # 145. Mr. Ream home brewed for nine years and now owns and operates a craft brewery. *Id.* at PageID # 143. Mr. Ream also has "taken the initial steps that [he] may lawfully take to engage in home distilling," including "extensive[] research[]" and study of the process of distilling and identification of rye and Bourbon "recipes that [he] would use." *Id.* at PageID # 144. The recipes require ingredients like "water and grains" that Mr. Ream "can easily obtain in short order." *Id.* at PageID # 145. Mr. Ream additionally has selected a specific "5-gallon copper pot being sold for approximately $600 that [he] would purchase." *Id.* at PageID # 144.

Even if there was some additional step that Mr. Ream reasonably could take, the district court failed to cite any authority requiring a plaintiff to take every possible step short of violating the law to establish an "intention to engage

in a course of conduct" proscribed by statute. *Susan B. Anthony List*, 573 U.S. at 159 (quotation marks omitted). Contrary to the district court's supposition, this Court has explained that "[w]hile [a] plaintiff must show more than a 'some day' intent[ion]," providing enough facts to "support a plausible inference" of intent is sufficient. *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 759 (6th Cir. 2019). For example, the plaintiffs in *Mosley* had standing because they plausibly stated they would return to the defendant establishments if not for their ADA noncompliance. *Id.* at 757. The Court held that a "definitive plan" was not necessary, *id.* at 759, much less did the Court require plaintiffs to execute every possible step of a plan. Mr. Ream's declaration makes a plausible showing that he would engage in home distilling but for the federal home-distilling prohibition, which is all that is required.

In any event, Mr. Ream has taken every possible step towards home distilling that he can. The district court faulted Mr. Ream for not purchasing a still or ingredients. Order, RE 33, PageID # 288–89. But Mr. Ream explained that he has not purchased a still because he "could not register it as federal law requires, using it would violate the law, and merely possessing an unregistered still or having a still in [his] home is unlawful and could subject [him] to criminal investigation." Ream Decl., RE20-1, at PageID #144; *see also* 27 C.F.R. § 29.55(a) (providing that approval of a distilled spirits permit, which Mr. Ream is prohibited from obtaining, constitutes registration of a still). Mr. Ream also explained that the ingredients he would need are things like "water and grains" that he can readily obtain. Ream Decl., RE20-1, at PageID # 145. The court

24

never explained why Mr. Ream should be required to purchase an (expensive!) still that he cannot use and the possession of which could subject him to prosecution. Nor did it explain why Mr. Ream should be required to purchase basic ingredients for a recipe that he cannot practically or legally make—ingredients that would spoil while this case is being litigated—when he could easily obtain them soon after ordering and receiving the still. The district court's requirements not only defy common sense, they are like requiring the plaintiffs in *Mosley* to gas up their cars and pack their bags on top of submitting definitive plans for a trip.

The district court further stated that Mr. Ream has not "taken any added steps to apply for an applicable license or permit." Order, RE 33, at PageID # 289. As explained above, the law does not require that Mr. Ream engage in the "futile gesture" of applying for a license that the federal home-distilling prohibition renders him ineligible to receive. *Carney*, 592 U.S. at 66. Mr. Ream needs to establish only that he is "able and ready" to apply for a license should the prohibition be invalidated. *Id.* The district court noted defendants' argument that "to apply for a permit or license to operate a still, an applicant must submit a building layout, security plan, detailed list of operations to be performed, and a description of the equipment involved." Order, RE 33, PageID # 287–88. But Mr. Ream has decided upon the specific still that he would use and the recipes with which he would begin experimenting, as well as extensively studied the process of distilling. Ream Decl., RE20-1, at PageID # 144–45. And defendants' proposition that Mr. Ream does not know the layout and security measures *of*

*his own home* is absurd. What is more, Mr. Ream has a degree in aerospace engineering, is a former Boeing engineer, and has owned and operated a brewery for nearly a decade. *See id.* at PageID # 142–43. To say that Mr. Ream is "able and ready" to apply for a distilled spirits plant license and home distill is an understatement.

**2.**    Mr. Ream's conduct is "arguably affected with a constitutional interest." *Susan B. Anthony List*, 573 U.S. at 159. Mr. Ream has a powerful constitutional interest in being free from federal regulation that exceeds Congress's enumerated powers. *See* U.S. Const., amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, *or to the people*." (emphasis added)). "[B]y denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power." *Bond v. United States*, 572 U.S. 844, 863 (2014) (quotation marks omitted); *see also United States v. Lopez*, 514 U.S. 549, 552 (1995) (explaining that the Commerce Clause "ensure[s] protection of our fundamental liberties" and prevents "tyranny and abuse" (quotation marks omitted)). However, the district court held that to satisfy this element, "Mr. Ream must establish that he has a constitutional interest in home distilling alcohol." Order, RE 33, PageID # 285. That holding cannot be squared with this Court's opinion in *Online Merchants Guild v. Cameron*, 995 F.3d at 549.

The plaintiffs in *Online Merchants* challenged "the constitutionality of Kentucky's price-gouging laws as applied to sellers on Amazon, invoking, among

other things, the extraterritoriality doctrine of the dormant commerce clause." *Id.* at 544. The Court held that the alleged conduct "is affected with a constitutional interest because the dormant commerce clause protects commercial actors against discriminatory, extraterritorial, and unduly burdensome state regulations of interstate commerce." *Id.* at 549–50; *see also Block v. Canepa*, 74 F.4th 400, 409 (6th Cir. 2023) (finding credible threat of prosecution in dormant Commerce Clause case); *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019) (same). By the district court's logic, however, *Online Merchants* was incorrectly decided because there is no constitutional right to price gouge. Contrary to the district court's holding, *Online Merchants* makes clear that a law affects a constitutional interest where it violates the constitution, even if there is no affirmative constitutional right to engage in the conduct proscribed by the law. *Accord Hernandez-Gotay v. United States*, 985 F.3d 71, 78 (1st Cir. 2021) (holding that plaintiff challenging federal law that allegedly exceeded Congress's Commerce Clause authority satisfied the credible-threat standard); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013) (holding that plaintiff challenging state law that allegedly violated the Supremacy Clause satisfied the credible-threat standard).

Consistent with *Online Merchants*, the federal district court in *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, 740 F. Supp. 3d 509 (N.D. Tex. 2024), determined that the federal home-distilling prohibition affects a constitutional interest. As that court explained, "[t]he question of whether the Constitution or any court has 'recognized' a particular right under the Constitution

should not be conflated with the public's interest in ensuring that Congress has not acted beyond its enumerated powers." *Id.* at 521. "[A] plaintiff need not allege the violation of an articulated right to keep Congress in its lane." *Id.*[5]

**3.**    Finally, Mr. Ream faces "a credible threat of prosecution" if he engages in home distilling. *Susan B. Anthony List*, 573 U.S. at 159. For a threat to be credible, a plaintiff's fear of prosecution must be "reasonable" rather than "imaginary or wholly speculative." *Block*, 74 F.4th at 409–10 (quotation marks omitted); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) (affording standing where plaintiffs are "not without some reason" to fear prosecution). "Various factors inform [this Court's] analysis of whether there is a credible threat of prosecution sufficient to confer standing: (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action; and (4) the defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Online Merchants*, 995 F.3d at 550 (quotation marks omitted). These "factors are not exhaustive, nor must each be established." *Id.*

---

[5] The district court criticized Mr. Ream for "fail[ing] to develop this argument," but he repeatedly cited *Online Merchants* and explained why the federal home-distilling prohibition did not fall within Congress's Commerce Clause authority or any other enumerated power. *See* Summary Judgment Mot., RE 20, PageID # 126, 128–38; Reply, RE 31, PageID # 264–72.

The mere existence of the federal-home distilling prohibition—with the severe criminal penalties attached—establishes a credible threat. Other circuits have held that "the existence of a statute implies a threat to prosecute." *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010); *Korte v. Sebelius*, 735 F.3d 654, 667 (7th Cir. 2013) (same); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) ("Where a statute specifically proscribes conduct, the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against it." (quotation marks omitted)). In *McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016), this Court distinguished the Seventh Circuit's decision in *Bauer* because the challenged statute in *McKay* "provide[d] for exemptions on a case-by-case basis, which ma[de] enforcement less certain." *Id.* at 869. But the federal home-distilling prohibition contains no exemptions and indisputably criminalizes Mr. Ream's desired conduct. "[M]ost people are frightened of violating criminal statutes" like the prohibition, and their fears are certainly reasonable. *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003).

Even if the unambiguous criminal provisions without exceptions were not enough, "there is at least some evidence of past enforcement actions" regarding the federal home-distilling prohibition. *Online Merchants*, 995 F.3d at 550. The district court noted that the reported decisions concerning convictions for violation of the prohibition are a few decades old.[6] Order, RE 33, PageID # 291.

---

[6] *See, e.g.*, *United States v. Whitehead*, 424 F.2d 446 (6th Cir. 1970); *United States v. West*, 328 F.2d 16 (2d Cir. 1964); *Reynolds v. United States*, 289 F.2d 698 (10th Cir. 1961); *United States v. Dahir*, 275 F. Supp. 83 (D. Minn. 1967); *United States*

But those reported decisions are just the tip of the iceberg of defendants' enforcement activity, and a credible threat "need not stem from criminal action alone" because a defendant's "[a]dministrative action[s]" also may be considered. *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) (quotation marks omitted). In 2011, TTB published a rule specifically stating that "[a] person may not produce distilled spirits at home for personal use." 27 C.F.R. § 19.51; *see* Revision of Distilled Spirits Plant Regulations, 76 Fed. Reg. 9080 (2011). TTB's current guidance to the public likewise warns that "[f]ederal law strictly prohibits individuals from producing distilled spirits at home" and that doing so "can expose you to Federal charges for serious offenses and lead to consequences including…criminal penalties" like imprisonment.[7]

Following through on their threats, in 2014, defendants conducted a joint operation with state officials that led to the arrest of 8 home distillers and the seizure of 46 stills, and defendants sent letters to 8,136 home distillers warning of "legal consequences associated with the illegal production of distilled spirits." Decl. of Robert M. Angelo, Director, Trade Investigations Division, TTB, ECF No. 39-1, *Hobby Distillers Assoc. v. TTB*, Case No. 4:23-cv-1221 (N.D. Tex. Apr. 8, 2024); Jacob Sullum, Reason, *Feds Take a Sudden Interest in Busing Home Distillers* (July 14, 2014) ("Sullum").[8] In 2016, the Department of Justice obtained

---

*v. Lewis*, 270 F. Supp. 807 (S.D.N.Y. 1967); *United States v. Thomas*, 216 F. Supp. 942 (N.D. Cal. 1963).

[7] TTB, Home Distilling, *supra*.

[8] *Available at* https://reason.com/2014/07/15/feds-take-a-sudden-interest-in-busting-h/ (last visited June 20, 2025). Mr. Ream cited both TTB Director

an indictment against a couple who produced moonshine from a still in their basement. *See* Press Release, U.S. Dept. of Justice, Indictment: Couple Operated Moonshine Still in Newton (Dec. 7, 2016);[9] Amy Renee Leiker, *They sold moonshine from their basement; now they're in trouble*, Wichita Eagle (Dec. 7, 2016) ("A Newton couple is facing federal charges for making and selling moonshine out of their basement.");[10] *see also* Bill Lohman, *Is it time to legalize homemade spirits?*, Richmond Times-Dispatch (Feb. 27, 2017) (reporting that agents made "arrests and confiscating dozens of home stills").[11] As one article describes, "[p]urchasing as little as a simple boiling kettle [for home distilling] may well earn you a visit from armed TTB agents." Sullum, *supra*.

Finally, this Court has explained that a "threat is considered especially substantial when the administrative agency has not disavowed enforcement." *Kiser*, 765 F.3d at 609 (quotation marks omitted). Defendants had the

---

Angelo's declaration and the Sullum article in the district court. *See, e.g.*, Opp to MTD, RE 21, PageID # 169. Regardless, these materials are subject to judicial notice. *See Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) ("We can take judicial notice of developments in related proceedings in other courts of record." (quotation marks omitted)); *Caldwell v. Gasper*, No. 22-1031, 2022 WL 16629161, at *4 (6th Cir. Nov. 1, 2022) (taking judicial notice of news article).

[9] *Available at* https://www.justice.gov/usao-ks/pr/indictment-couple-operated-moonshine-still-newton (last visited June 19, 2025).

[10] *Available at* https://www.kansas.com/news/local/crime/article119403558.html (last visited June 19, 2025).

[11] *Available at* https://richmond.com/lohmann-is-it-time-to-legalize-homemade-booze/article_34a7ffdc-5305-57fc-9b07-33dc1fbab4f6.html (last visited June 19, 2025).

opportunity to disavow enforcement against Mr. Ream in their filings below and they did not do so. To the contrary, TTB's website warns Mr. Ream that he would expose himself "to Federal charges for serious offenses" if he home distills. TTB, Home Distilling.[12] Defendants' argument that Mr. Ream's fear of prosecution is imaginary is unbelievable given defendants' own guidance stating the opposite.

## II.     The Federal Home-Distilling Prohibition is Unconstitutional

The district court likewise erred in denying Mr. Ream's cross-motion for summary judgment. The Court reviews that denial de novo. *See Bay Shore Power Co. v. Oxbow Energy Sols., LLC*, 969 F.3d 660, 663 (6th Cir. 2020). The district court denied the motion as moot based upon its holding that Mr. Ream lacks standing, Order, RE 33, PageID # 278, which is incorrect for the reasons explained above. The district court instead should have granted the motion.

Mr. Ream's complaint raises a single cause of action: that the federal home-distilling prohibition exceeds Congress's authority both as a facial matter and as applied to Mr. Ream's desired conduct of distilling small quantities of alcohol at home for personal consumption. Complaint, RE 1, PageID # 7–8. The parties agree that this claim presents solely legal issues, *see* Opp. to MSJ, RE 28, PageID # 232, and the only federal court to address the constitutionality of the federal home-distilling prohibition has invalidated it, *see Hobby Distillers Ass'n*, 740 F. Supp. 3d at 536. Because the federal home-distilling prohibition is

---

[12]     *Available    at*    https://www.ttb.gov/distilled-spirits/penalties-for-illegal-distilling (last visited June 19, 2025).

not justified by any constitutional authority, Mr. Ream is entitled to summary judgment.

## A. The Prohibition Is Not Justified by Congress's Commerce Clause Power

The federal home-distilling prohibition does not fall within Congress's authority to "regulate Commerce…among the several States," U.S. Const. art. I, § 8, cl. 3, in conjunction with the Necessary and Proper Clause, U.S. Const. art. 1, § 8, cl. 18. Defendants asserted below that this issue is controlled by *Gonzales v. Raich*, 545 U.S. 1 (2005), but the similarities with *Raich* are skin deep.

1.    In *Raich*, the Supreme Court considered an as-applied challenge to Congress's "categorical prohibition of the manufacture and possession of marijuana as applied to the intrastate manufacture and possession of marijuana for medical purposes." 545 U.S. at 15. The Court began by outlining the "three general categories of regulation in which Congress is authorized to engage under its commerce power": (1) "Congress can regulate the channels of interstate commerce"; (2) Congress can "regulate and protect that instrumentalities of interstate commerce, and persons or things in interstate commerce"; and (3) Congress can "regulate activities that substantially affect interstate commerce." *Id.* at 16–17. The third category draws upon Congress's authority to "make all Laws which shall be necessary and proper" to "regulate Commerce…among the several States." *Id.* at 22 (quoting U.S. Const., art. I, § 8).

As in this case, only the third category was at issue in *Raich*. *Id.* at 17. The government did not and could not claim that the prohibition of marijuana culti-

33

vation and possession fell within Congress's authority to regulate the "channels of interstate commerce" or the "instrumentalities of interstate commerce, and persons or things in interstate commerce." *Id.* at 16–17; *see United States v. Rife*, 33 F.4th 838, 842 (6th Cir. 2022) (explaining that "[c]ommerce itself, then, meant trade and transportation thereof, as opposed to activities preceding those things" like "manufacturing and agriculture"). Pursuant to the third category of Commerce Clause authority, however, the Court held that "Congress can regulate purely intrastate activity…if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." 545 U.S. at 18. For example, "[p]rohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product." *Id.* at 26. The Court cited as examples Congress's prohibitions of the possession of bald and golden eagles, biological weapons, nuclear material, and contraband cigarettes—all of which support Congress's prohibition of interstate commerce in these items. *Id.* at n.36.

Similarly, the Court reasoned that marijuana was a "fungible commodity for which there is an established, albeit illegal, interstate market" and "homegrown marijuana tends to frustrate the federal interest in eliminating commercial transactions in the interstate market in their entirety." *Id.* at 18–19. "Given the enforcement difficulties that attend distinguishing between marijuana cultivated locally and marijuana grown elsewhere, and concerns about diversion into illicit channels," the Court approved Congress's determination that "failure to regulate the intrastate manufacture and possession of marijuana would leave a

gaping hole" in its prohibition of interstate commerce in marijuana. *Id.* at 22 (citation and footnote omitted); *see also id.* at 42 (Scalia, J., concurring) ("Congress could reasonably conclude that its objective of prohibiting marijuana from the interstate market 'could be undercut' if those activities were excepted from its general scheme of regulation.").

As Justice Scalia explained in his concurring opinion, *Raich* stands for the proposition that "Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." *Id.* at 37. Or, as this Court put it in *United States v. Rose*, 522 F.3d 710 (6th Cir. 2008), *Raich* "held that an activity involving a commodity for which there is an interstate market has a substantial relation to interstate commerce" where … 'failure to regulate that class of activity would undercut the regulation of the interstate market in the commodity.'" *Id.* at 717; *see also id.* at 719 (holding prohibition on intrastate transfers of firearms to felons to be "a proper exercise of Congress's Commerce Clause power" because the absence of such regulation "would undercut [Congress's] regulation of the interstate firearms market").

Unlike in *Raich*, defendants have never identified *any* congressional regulation of interstate commerce that is supported by the federal home-distilling prohibition. Nor could they. Congress has not prohibited interstate commerce in distilled spirits, and thus it cannot be said that "Congress can prohibit local [home distillation] in an effort to…halt interstate trade" in distilled spirits. *United States v. Kallestad*, 236 F.3d 225, 231 (5th Cir. 2000). Simply put, there is no federal regulation of interstate commerce in distilled spirits that would be "under-

35

cut" by Mr. Ream's home distilling. The district court in *Hobby Distiller Association* thus rejected defendants' argument that "Congress's authority to regulate at-home distilling is identical to prohibiting at-home cultivation of marijuana" in *Raich*, calling this argument "simply wrong, because it skips the requirement that Congress must first have an established, comprehensive regulatory regime in place." 740 F. Supp. 3d at 532.

Defendants' theory would untether the third category of Commerce Clause authority from its constitutional justification in the Necessary and Proper Clause. The Necessary and Proper Clause only authorizes measures that are "necessary and proper for *carrying into Execution* [Congress's enumerated] Powers." Art. I, § 8, cl. 18 (emphasis added). Such measures must be "incidental to the [enumerated] power" and "derivative of, and in service to, a granted power." *NFIB*, 567 U.S. at 559–60 (quotation marks omitted); *see also Raich*, 545 U.S. at 38 (Scalia, J., concurring) ("[T]he power to enact laws enabling effective regulation of interstate commerce can only be exercised in conjunction with congressional regulation of an interstate market" and "extends only to those measures necessary to make the interstate regulation effective."). The federal home-distilling prohibition cannot be "necessary and proper for carrying into Execution" a congressional regulation of interstate commerce if no such regulation of interstate commerce exists.

Moreover, even defendants acknowledged below that Congress cannot regulate intrastate noncommercial activities that, considered as a class, do not "substantially affect interstate commerce." Mot. to Dismiss, RE 13, PageID # 89

36

(quoting *Raich*, 545 U.S. at 17). Defendants have never explained how the class of activity here would substantially affect interstate commerce in distilled spirits. Defendants noted that "[d]istilled spirits are a multi-billion-dollar industry," *id.* at PageID # 90, but they never claimed that home distilling for personal consumption would have even a discernable—much less a "substantial"—impact on that industry.

If accepted, defendants' position would dramatically expand the scope of the third category of Commerce Clause authority—a category that this Court previously has declined to extend because it already "depart[s] from the original meaning." *Rife*, 33 F.4th at 843. Permitting regulation of noncommercial intrastate activity that is not necessary to make effective any regulation of interstate commerce would all but give Congress a "license to regulate an individual from cradle to grave." *NFIB*, 567 U.S. at 557. It is one thing to say that Congress may prohibit local cultivation of marijuana to make effective its prohibition of interstate commerce in the substance. It is a horse of a different color entirely to say that Congress may prohibit home distilling in the abstract, without having to identify any regulation of interstate commerce that the prohibition supports. If Congress can prohibit home distilling just because it feels like it, Congress can prohibit anything.

Contrary to defendants' position, the Supreme Court "has refused to extend this third category [of Commerce Clause] indefinitely." *United States v. Allen*, 86 F.4th 295, 300 (6th Cir. 2023). For example, in *United States v. Morrison*, 529 U.S. 598 (2000), and *United States v. Lopez,* 514 U.S. at 567, the Supreme

Court held respectively that "Congress could not enact a civil remedy for violence against women or a criminal ban on the possession of guns near schools because these noneconomic activities had a tenuous connection to interstate commerce," *Allen*, 86 F.4th at 300. This Court likewise should reject defendants' attempt to extend the third category of Commerce Clause authority to permit the regulation of noncommercial intrastate activities that are not necessary to make any federal regulation of interstate commerce effective. As the Supreme Court explained in *NFIB*, its "cases have always recognized that the power to regulate commerce, though broad indeed, has limits." 567 U.S. at 554 (quotation marks omitted). "The Government's theory would erode those limits, permitting Congress to reach beyond the natural extent of its authority, 'everywhere extending the sphere of its activity and drawing all power into its impetuous vortex.'" *Id.* (quoting The Federalist No. 48, at 309 (J. Madison)) (cleaned up). Absolutely nothing in the Supreme Court's Commerce Clause jurisprudence dictates that unlikely result.

**2.**    If *Raich* controls Mr. Ream's challenge to the federal home-distilling prohibition, as defendants claim, then *Raich* is wrongly decided, its errors should not be extended, and it should be overruled by the Supreme Court.

Congress's Commerce Clause authority does not "extend…to something as modest as the home cook's herb garden," or, as here, the home distiller's production of sprits, especially for personal use. *Raich*, 545 U.S. at 51 (O'Connor, J., dissenting). It is not consistent with the spirit of the Constitution, and the powers it reserves to the states and the people, for Congress to regulate mundane

noncommercial activities carried out at home. *Id*. at 51–52 (O'Connor, J., dissenting); *see also id*. at 65–66 (Thomas, J., dissenting). If Congress is going to regulate persons engaging in intrastate activities, particularly of the noncommercial variety, then it needs more than "vague and unspecific" findings that its "statutory scheme will be undermined if [it] cannot exert power over [those] individuals." *Id*. at 55 (O'Connor, J. dissenting); *see also Morrison*, 529 U.S. at 612 ("[T]he existence of such findings may 'enable us to evaluate the legislative judgment that the activity in question substantially affect[s] interstate commerce, even though no such substantial effect [is] visible to the naked eye.'" (quoting *Lopez*, 514 U.S. at 563)). And even where Congress has the power to reach a general class of persons engaging in activity that is or affects interstate commerce, it may not sweep in a "distinct and separable subclass" of persons whose activities are disconnected from interstate commerce or otherwise beyond Congress's reach. *Raich*, 545 U.S. at 62 (Thomas, J., dissenting); *see also id*. at 47–48 (O'Connor, J., dissenting). In short, if defendants are right about *Raich*, then *Raich* was wrong.

### B.    The Prohibition Is Not Justified by Congress's Taxing Power

The federal home-distilling prohibition also does not fall within Congress's taxing power. The prohibition is not itself a tax, so the question is whether it is "necessary and proper for carrying into Execution" a tax. U.S. Const. art. I, § 8, cl. 18. The Necessary and Proper Clause authorizes only measures "which are appropriate, which are plainly adapted to [carrying into execution an enumerated power], [and] which are…consist[ent] with the letter and spirit of

the constitution." *McCulloch v. Maryland*, 4 Wheat. 316, 421 (1819). A "necessary" law not only must be "conducive to the [enumerated power], but also 'plainly adapted' to that end." *Jinks v. Richland Cnty., S.C.*, 538 U.S. 456, 462 (2003). And just because a law is "necessary," that does not make it "proper." *Printz v. United States*, 521 U.S. 898, 924 (1997). Here, the prohibition is neither "plainly adapted" nor "appropriate" to executing the federal excise tax on distilled spirits.

**1.** To start with, the federal home-distilling prohibition is not "plainly adapted" to carrying into execution the tax on distilled spirits. Indeed, the prohibition *prevents* Mr. Ream from engaging in taxable activity (producing distilled spirits) and thereby paying the tax.

In the taxing power context, the Supreme Court has sometimes framed the Necessary and Proper Clause inquiry as whether a measure is "reasonably calculated to prevent avoidance of a tax." *Helvering v. City Bank Farmers Tr. Co.*, 296 U.S. 85, 90 (1935); *see also McCulloch*, 4 Wheat. at 423 (measure must be "really calculated to effect any of the objects intrusted to the government"). A measure is neither "plainly adapted" nor "reasonably calculated" simply because it has an "attenuated effect" on tax collection. *Morrison*, 529 U.S. at 615. A chain of causal inferences "must be controlled by some limitations lest, as Thomas Jefferson warned, congressional powers become completely unbounded by linking one power to another ad infinitum in a veritable game of this is the house that Jack built." *United States v. Comstock*, 560 U.S. 126, 150 (2010) (Kennedy, J., concurring) (quotation marks omitted). Instead, a measure

40

must have "an immediate and appropriate relation" to an authorized object and not merely "a *tendency* only to *promote*" it. James Madison, The Report of 1800;[13] *see also Sabri v. United States*, 541 U.S. 600, 613 (2004) (Thomas, J., concurring in the judgment) (the Clause requires an "obvious, simple, and direct relation").

In *United States v. Dewitt*, the Supreme Court invalidated a statute providing that "no person shall mix for sale naphtha and illuminating oils, or shall knowingly sell or keep for sale, or offer for sale such mixture, or shall sell or offer for sale oil made from petroleum for illuminating purposes." 76 U.S. 41, 42 (1869) (quoting 14 Stat. 484). The government argued that "the prohibition of the sale of the illuminating oil described in the [statute] was in aid and support of the internal revenue tax imposed on other illuminating oils." *Id.* at 44. The Court explained that "[i]f the prohibition … has any relation to taxation at all, it is merely that of increasing the production and sale of other oils, and, consequently, the revenue derived from them, by excluding from the market the particular kind described." *Id.* But this possibility was "too remote and too uncertain to warrant [the Court] in saying that the prohibition is an appropriate and plainly adapted means for carrying into execution the power of laying and collecting taxes." *Id.*

Similarly, in *United States v. Thompson*, 361 F.3d 918 (6th Cir. 2004), this Court considered an as-applied challenge to a provision of the National Firearms Act criminalizing the possession of an unregistered firearm. The Supreme

---

[13]    *Available   at*   https://founders.archives.gov/?q=%22necessary%20and%20proper%22&s= 1511311111&r=71 (last visited June 19, 2025).

Court upheld the registration provisions as a facial matter in *Sonzinsky v. United States*, because registration facilitated collection of the transfer tax on firearms. 300 U.S. 506, 513 (1937). The defendant in *Thompson* argued that the provision was unconstitutional as applied to him because the "firearms" he possessed were Molotov cocktails, which he claimed he could not legally register. 361 F.3d at 921. The Court rejected his challenge only because he had never "sought to register the firearms, but…been denied permission to do so." *Id.* at 921–22. However, the court explained that if the law *did* prevent him from registering the Molotov cocktails, then "it would be difficult to perceive the rationality of [a] statute" that "prevented [an individual] from registering and paying manufacturer or transfer taxes" on certain firearms as a measure in aid of tax collection. *Id.*

    The federal home-distilling prohibition is even further afield from taxation than the prohibition on illuminating oils rejected in *Dewitt* and the irrational prohibition of the possession of an impossible-to-register firearm in *Thompson*. The federal home-distilling prohibition not only fails to facilitate tax-collection from Mr. Ream or any other home distiller, it actually accomplishes the opposite: it prevents Mr. Ream from distilling alcohol and thus paying the tax on distilled spirits. The district court in *Hobby Distillers Association* explained that "Congress has criminally prohibited the simple possession of the apparatus used to produce that taxable commodity," and "[i]t does so with a criminal provision that, by its own text, makes no meaningful connection to the mechanisms by which those taxes are assessed and collected." 740 F. Supp. 3d at 530.

Such is decidedly not how the taxing power works. In *NFIB*, the Supreme Court explained that "Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more…. [I]mposition of a tax…leaves an individual with a lawful choice to do or not do a certain act, so long as he is willing to pay a tax levied on that choice." 567 U.S. at 574. But the federal home-distilling prohibition leaves Mr. Ream with *no* choice to home distill even though he is "willing to pay a tax levied on that choice." *Id.*

Below, defendants theorized that home distilling might cause a "[d]iversion of the revenue from the tax on distilled spirits." Mot. to Dismiss, RE 13, PageID # 86. They have never been able to specify, however, how exactly home distilling would decrease tax revenue. Defendants merely alluded to an "urgent necessity of preventing concealment of stills" in the 1800s. *Id.* at PageID # 87. But that is illogical: a home is no more suited to concealing stills and distilling activity than any other structure—or, for that matter, non-home premises located in the same buildings as homes. The federal prohibition "imposes current burdens and must be justified by current needs." *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 536 (2013) (quotation marks and citation omitted); *id.* at 554 (finding a statute unconstitutional on the basis that "40–year–old facts hav[e] no logical relation to the present day"). Mr. Ream, like other would-be home distillers, wants to distill small quantities of alcohol for personal consumption, not to engage in a non-existent black market for miniscule quantities of bootleg booze. Moreover, the Internal Revenue Code contains numerous recordkeeping

measures that facilitate collection of the tax on distilled spirits. These provisions include a registration requirement for every still (26 U.S.C. § 5179) and the criminal prohibition on possessing an unregistered still (26 U.S.C. § 5601(a)(1)). Under these provisions, home distillers like Mr. Ream must register their stills before producing even one drop of alcohol. Defendants cannot explain how the federal home-distilling prohibition is necessary to prevent "concealment of stills" that are *registered* with Treasury.

Defendants' position on the scope of the federal-home distilling prohibition further betrays its lack of any meaningful connection with tax collection. According to defendants, distilling on "residential property" is permissible so long as a still is not located in a "dwelling house" or "shed, yard, or inclosure connected with a dwelling house." Opp. to MSJ, RE 28, PageID # 238; *see* 26 U.S.C. § 5601(a)(6) (prohibiting persons from using or possessing with intent to use "any still, boiler, or other utensil for the purpose of producing distilled spirits…in any dwelling house, or in any shed, yard, or inclosure connected with such dwelling house"). It is unclear what part of a "residential property" might fall outside that description, but presumably it might be something like an outbuilding located some distance from a house on a large rural plot of land. In that case, it is even more difficult to perceive of the prohibition as "plainly adapted" to tax collection: the prohibition prevents Mr. Ream from distilling in his own home or even openly in his front yard, but it would permit a farmer to operate a still in a hidden backwoods shanty.

44

The federal home-distilling prohibition does not have even an "attenuated effect" on tax revenue, let alone is its prohibition of a taxable transaction "plainly adapted" to tax collection. *Morrison*, 529 U.S. at 615. Prohibiting home distilling is no more "plainly adapted" to collection of the distilled spirits tax than prohibiting income would be to the income tax or prohibiting inheritances would be to the estate tax. In Federalist 29, Alexander Hamilton characterized as "absurd" the proposition that "a right to enact laws necessary and proper for the imposition and collection of taxes would involve that of varying the rules of descent and of the alienation of landed property." The Federalist No. 29, at 141 (Alexander Hamilton) (George W. Carey & James McClellan eds., 2001). Yet if defendants are right, such absurdity is exactly the result.

**2.**    The federal home-distilling prohibition also is not an "appropriate" means, "consist[ent] with the letter and spirit of the constitution," of facilitating collection of the distilled spirits tax. *McCulloch*, 4 Wheat. at 421. The prohibition's regulation of what Mr. Ream can do in his own home for his own personal use is not merely "derivative of, and in service to" the tax on distilled spirits, but a "substantial expansion of federal authority" to the private sphere. *NFIB*, 567 U.S. at 560; *see also id.* at 559 (clause does not license "the exercise of any 'great substantive and independent power[s]' beyond those specifically enumerated"). "[I]f the Constitution had intended to give to Congress so delicate a power, it would have been expressly granted." *Afroyim v. Rusk*, 387 U.S. 253, 260 (1967) (quotation marks omitted).

45

*Morris v. United States*, 161 F. 672 (8th Cir. 1908), is instructive. In that case, the Eighth Circuit considered a challenge to a conviction under the oleomargarine tax law in which the defendant objected that the indictment did not negate the statute's exception for producing oleomargarine solely for personal consumption. In reaching its holding, the Court indicated that the personal-consumption exception was constitutionally required: "It would challenge our conception of the constitutional powers of Congress for it to undertake to tax a person as a manufacturer of oleomargarine whose housewife, as a matter of fancy or taste, should color white oleomargarine so as to give it the hue of yellow butter, for the sole use of the family table." *Id.* at 679. The federal home-distilling prohibition is even more dubious than a tax on a housewife making margarine for her family because the former entirely prohibits Mr. Ream from distilling at home, even though he would gladly pay the tax on his home-distilled spirits.

Relatedly, in the *License Tax Cases*, 72 U.S. 462 (1866), the Supreme Court considered the constitutionality of a statute requiring retailers selling lottery tickets and liquor to obtain a license, which facilitated payment of a special tax. 13 Stat. 223 (1864), *as amended by* 14 Stat. 98 (1866). The Supreme Court held that the statutes were constitutional, but only because the licenses gave the holders no authority to carry on such trades in violation of state law. *See License Tax Cases*, 72 U.S. at 470. The Court explained that the taxing power gives Congress "no power of regulation nor any direct control" over "commerce and trade." *Id.* at 470–71. "No interference by Congress with the business of citizens transacted within a State is warranted by the Constitution, except such as is strictly inci-

dental to the exercise of powers clearly granted to the legislature," and "Congress cannot authorize a trade or business within a State in order to tax it." *Id.* at 471.

As in *License Tax Cases*, the federal home-distilling provision exercises "direct control" over Mr. Ream's personal conduct and is even less appropriately characterized as "strictly incidental" to tax collection. There is at least an obvious relationship between authorization of a taxable activity and tax collection, as the federal government cannot collect taxes on an activity that does not occur because it is prohibited. The federal home-distilling prohibition, by contrast, prohibits taxable activity, in addition to exercising "direct control" over personal conduct. *Id.* Just like federal authorization of a taxable activity in order to tax it exceeds Congress's taxing power, federal prohibition of a taxable activity under the taxing power offends core state police powers and is inconsistent with the "letter and spirit of the constitution." *McCulloch*, 4 Wheat. at 421.

Defendants' taxing power argument has no limiting principle, and if accepted would permit Congress to regulate or prohibit any activity under the guise of taxing it. If the federal home-distilling prohibition is an "appropriate" measure for collecting the tax on distilled spirits, so too would be federal grants of monopoly or occupational qualifications on any profession. *Contra License Tax Cases*, 72 U.S. at 470–71 (the taxing power gives Congress "no power of regulation nor any direct control" over "commerce and trade"). After all, concentration of industry would make it easier to collect taxes from that industry—IRS agents would need to oversee only one business instead of many—and occupa-

tional qualifications would ensure that persons of honorable, taxpaying character are engaged in trade. *Contra* An Impartial Citizen V, Petersburg Va. Gazette, Feb. 28, 1788, *reprinted in* 8 The Documentary History of the Ratification of the Constitution 428, 431 (John P. Kaminski & Gaspare J. Saladino eds., 1988) (rejecting argument that "the Congress may grant monopolies in trade … and in short, do whatever they please" under the Necessary and Proper Clause). What is more, the federal government could prohibit self-employment on the theory that self-employed individuals are more likely to evade payroll and income taxes. And the federal government could impose a nominal excise tax on baking bread or making clothing and prohibit home bread-baking or home sewing on the theory that home-sewers or home-bakers are less likely to pay the tax.

In short, if the federal home-distilling prohibition is constitutional, "we are hard pressed to posit any activity by an individual that Congress is without power to regulate." *Lopez*, 514 U.S. at 564. That supposition cannot be squared with the Constitution, which "must be read carefully to avoid creating a general federal authority akin to the police power." *NFIB*, 567 U.S. at 536.

## <u>Conclusion</u>

The Court should reverse the judgment below.

Dated: June 24, 2025

Respectfully submitted,

/s/ *Andrew M. Grossman*

ROBERT ALT
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, OH 43215
(614) 224-4422
robert@buckeyeinstitute.org

PATRICK T. LEWIS
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 861-7096
plewis@bakerlaw.com

ANDREW M. GROSSMAN
KRISTIN A. SHAPIRO
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., NW,
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Counsel for Mr. Ream*

## **Certificate of Compliance**

I certify that this brief complies with the type-volume limitation set by Fed. R. App. P. 32(a)(7) because it contains 12,974 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Cir. R. 32(b)(1).

Dated: June 24, 2025         */s/ Andrew M. Grossman*
                                         Andrew M. Grossman

## **Certificate of Service**

I certify that on June 24, 2025, I caused the foregoing brief to be filed with the Court electronically using the CM/ECF system, which will send a notification to all counsel of record.

Dated: June 24, 2025                    */s/ Andrew M. Grossman*
                                         Andrew M. Grossman

## Designation of Relevant District Court Documents

Pursuant to Sixth Circuit Rules 28(b)(1)(A)(i) and 30(g), appellant designates the following district court documents as relevant:

| Record Entry | Description | Page ID # Range |
|---|---|---|
| 1 | Complaint | 1–9 |
| 13 | Defendants' Motion to Dismiss and Brief in Support | 66–93 |
| 20 | Plaintiff's Combined Cross-Motion for Summary Judgment and Brief in Support and Opposition to Defendants' Motion To Dismiss | 109–140 |
| 20-1 | Exhibit 1 to Plaintiff's Cross-Motion for Summary Judgment | 141–150 |
| 21 | Plaintiff's Combined Cross-Motion for Summary Judgment and Brief in Support and Opposition to Defendants' Motion To Dismiss | 151–182 |
| 21-1 | Exhibit 1 to Plaintiff's Cross-Motion for Summary Judgment | 183–192 |

| 27 | Defendants' Reply Brief in Support of Defendants' Motion To Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment | 198–225 |
|---|---|---|
| 28 | Defendants' Reply Brief in Support of Defendants' Motion To Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment | 226–253 |
| 31 | Plaintiff's Reply Brief in Support of Cross-Motion for Summary Judgment | 258–274 |
| 33 | Opinion and Order Granting Defendants' Motion to Dismiss and Denying Plaintiff's Cross-Motion for Summary Judgment as Moot | 278–292 |
| 34 | Final Judgment | 293 |
| 35 | Notice of Appeal | 294–295 |