CASE NO. 25-3259

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOHN REAM,

*Appellant*,

v.

U.S. DEPARTMENT OF THE TREASURY, ET AL.,

*Appellees*.

---

*On Appeal from the United States District Court*
*for the Southern District of Ohio*
*Case No. 2:24-cv-364*
*The Honorable Edmund A. Sargus, Jr., Presiding*

---

# BRIEF OF THE CATO INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT

---


Thomas A. Berry
*Counsel of Record*
Brent Skorup
Dan Greenberg
Alexander Xenos
CATO INSTITUTE
1000 Massachusetts Ave., N.W.
Washington, DC, 20001
443-254-6330
tberry@cato.org


July 1, 2025

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The Cato Institute is a nonprofit entity operating under § 501(c)(3) of the Internal Revenue Code. *Amicus* is not a subsidiary or affiliate of any publicly owned corporation, and none issue shares of stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to the amicus's participation.

**TABLE OF CONTENTS**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ...................................... i

TABLE OF AUTHORITIES ........................................................................ iii

INTEREST OF *AMICUS CURIAE* .................................................................. 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................... 2

ARGUMENT ................................................................................................ 6

I. THE GOVERNMENT'S AT-HOME DISTILLING BAN IS NOT REASONABLY RELATED TO THE COLLECTION OF TAXES. ......... 6

A. The Government's Reliance on *Felsenheld* Is Misplaced. ..................... 7

B. The Government's Reliance on *Stilinovic* Is Misplaced. ....................... 9

II. THE FEDERAL TAXING POWER CANNOT BE USED AS A FEDERAL POLICE POWER. ...................................................... 11

III. LIBERTY AND FEDERALISM ARE JEOPARDIZED IF CONGRESS CAN PROHIBIT ANY TAXABLE CONDUCT BECAUSE IT OCCURS WITHIN A HOME. .......................................... 15

CONCLUSION ............................................................................................ 17

CERTIFICATE OF COMPLIANCE ........................................................... 18

CERTIFICATE OF SERVICE ..................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Drexel Furniture Co.*, 259 U.S. 20 (1922) ....................14

*Berman v. Parker*, 348 U.S. 26 (1954) ....................5

*Brown v. Maryland*, 25 U.S. 419 (1827) ....................11

*Felsenheld v. United States*, 186 U.S. 126 (1902).................... 6, 7, 8, 10

*Goldstein v. Miller*, 488 F. Supp. 156 (D. Md. 1980) ....................11

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau,* No. 4:23-CV-1221-P, 2024 WL 3357841 (N.D. Tex. 2024).................... 6, 7, 11

*NFIB v. Sebelius*, 567 U.S. 519 (2012).................... 4, 6, 12, 13

*Ripper v. United States*, 178 F. 24 (8th Cir. 1910) ....................11

Stilinovic v. United States, 336 F.2d 862 (8th Cir. 1964) .................... 6, 9, 10

*United States v. Constantine*, 296 U.S. 287 (1935) ....................13

*United States v. Dewitt*, 76 U.S. 41 (1869).................... 12, 13

*United States v. Goldberg*, 225 F.2d 180 (8th Cir. 1955)....................6

**Statutes**

26 U.S.C. § 5001 ....................7

26 U.S.C. § 5178(a)(1)(B) .................... 3, 14, 15

26 U.S.C. § 5179....................10

26 U.S.C. § 5203....................10

26 U.S.C. § 5207....................10

26 U.S.C. § 5301(c)(1)....................9

26 U.S.C. § 5601(a)(6)....................3

An Act Imposing Taxes on Distilled Spirits and Tobacco and for Other Purposes, 15 Stat. 125 (1868) ....................15

**Other Authorities**

Clay Risen, *Back in the Mix: New England Rum*, N.Y. TIMES (Oct. 30, 2012) ....................2

Eugene Mcquillin, *Constitutional Validity of Zoning Under the Police Power*, 11 ST. LOUIS L. REV. 76 (1926)....................14

Rachel Cooper, *George Washington's Whiskey Distillery and Gristmill at Mount Vernon*, ABOUT.COM (Sept. 13, 2008) ........................................................ 2

WILLIAM HOGELAND, THE WHISKEY REBELLION: GEORGE WASHINGTON, ALEXANDER HAMILTON AND THE FRONTIER REBELS WHO CHALLENGED AMERICA'S NEWFOUND SOVEREIGNTY (2006) ........................................................ 2

**Regulations**

27 C.F.R. § 19.45 ........................................................ 10

Revision of Distilled Spirits Plant Regulations, 76 Fed. Reg. 9080 (2011) ............. 2

**Constitutional Provisions**

U.S. CONST. art I, § 8, cl. 1 ........................................................ 6

## INTEREST OF *AMICUS CURIAE*[1]

The Cato Institute is a nonpartisan public policy research foundation founded in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Toward that end, Cato's Robert A. Levy Center for Constitutional Studies publishes books and studies about legal issues, conducts conferences, produces the annual *Cato Supreme Court Review*, and files *amicus* briefs in constitutional law cases. This case interests Cato because a proper respect for the U.S. Constitution's system of limited and enumerated powers protects both individual liberty and federalism. Here, the federal government intrudes on Americans' liberties because it has exceeded those limited and enumerated powers.

[1] Fed. R. App. P. 29 Statement: No counsel for either party authored this brief in any part. No person or entity other than *amicus* made a monetary contribution to its preparation or submission. All parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Americans were distilling spirits on their homesteads before this nation was founded.[2] Colonial Americans enjoyed drinking rum and grain whiskey, and by 1770, there were over 150 distilleries in New England alone.[3] Prominent Founding Era leaders like George Washington had successful distilling businesses on their properties.[4] Washington produced corn and rye whiskey near his home in Mount Vernon; it was such a substantial commercial operation that two employees, a site manager and an assistant, lived on the distillery's premises.[5] Today, however, the U.S. government bans homestead stills like Washington's. *See* Revision of Distilled Spirits Plant Regulations, 76 Fed. Reg. 9080 (2011) ("While Federal law allows for the limited home production of wine and beer, no such provision exists for distilled spirits").

---

[2] *See*, *e.g.*, William Hogeland, *The Whiskey Rebellion: George Washington, Alexander Hamilton and the Frontier Rebels Who Challenged America's Newfound Sovereignty* 66 (Lisa Drew 2006) (noting that in the Revolutionary War era, "[d]istilling went on in home stillhouses, at community stills, and in large-scale commercial operations").

[3] *See* Clay Risen, *Back in the Mix: New England Rum*, N.Y. TIMES (Oct. 30, 2012), https://tinyurl.com/yj3dmfvk.

[4] *See* Rachel Cooper, *George Washington's Whiskey Distillery and Gristmill at Mount Vernon*, ABOUT.COM (Sept. 13, 2008), https://tinyurl.com/38brt674.

[5] *See id*.

John Ream, like many hobbyists, would like to engage in this American tradition. Ream wants to distill spirits on his private property for his personal use. However, he cannot because an 1868 federal law prohibits home distilling. *See* 26 U.S.C. § 5178(a)(1)(B) (broadly prohibiting distilling in dwellings and outbuildings).[6] Operating a still in your home—or on a parcel "connected with" your home—is a felony. § 5601(a)(6). Ream faces the prospect of imprisonment and substantial fines for distilling. He therefore sued the government, alleging that the ban violates the U.S. Constitution. Compl. 7–8.

In response, the government deployed an unusual and far-reaching argument. It justified the ban by theorizing that when a taxable event occurs in a home, the government can use its Taxing Power to prohibit Americans from engaging in that practice entirely. Mot. to Dismiss 12 (arguing that because the tax attaches at creation, "the government has an interest in the tax revenue from distilled spirits from the moment they are produced"). The government's argument implies that the Taxing Power includes a broad power to regulate personal conduct—and that this federal power displaces local police powers and state government authority. Ultimately, the district court dismissed Ream's complaint for lack of standing. Ream has appealed.

---

[6] Unless noted otherwise, all citations to the U.S. Code are to Title 26.

We write to highlight three points. First, although courts have sometimes deferred to the rules Congress has promulgated which are tenuously or incidentally connected to the Tax Power, the use of this power to prohibit at-home distilling goes too far. This ban does not resemble other incidental tax rules the government cites as analogues, like mandating bottle labels, affixing tax stamps to taxed products, or requiring the use of measuring instruments. Such incidental measures directly improve the efficiency of tax collection. In contrast, an outright prohibition on distilling spirits in dwellings and outbuildings has a far more tenuous relation to collecting revenue, and so the precedents the government relies on do not apply here. Indeed, the distinction between the at-home distilling ban and the incidental tax rules described above is a difference both in degree and in kind.

Second, the scope of Congress's taxation power is limited by the Constitution. The Supreme Court made it clear in *NFIB v. Sebelius* that it is impermissible for tax provisions to serve as a roundabout way of regulating individual behavior that is not reachable via the Commerce Clause. 567 U.S. 519, 573–74 (2012). In other words, the Taxing Power must serve a revenue-generating purpose. *Id*. But the criminalization of at-home distilling contravenes *NFIB*'s principle, because the prohibition of distilling does not raise revenue. In the case at hand, Congress regulates conduct—distilling at home for personal use—that is entirely distinct from

tax collection, and the statutory prohibition is an impermissible attempt to use the Tax Power as something like a federal police power.

Third, the government's argument would upend our federal system. The government argues that it can broadly regulate conduct in Americans' homes, provided those regulations are disguised as tax provisions. But questions of health, safety, and morals that do not involve transmitting goods and services across state lines are the exclusive province of the states. *See Berman v. Parker*, 348 U.S. 26, 32 (1954). The government supplies no limiting principle for its contention that it may prohibit taxable conduct that occurs within the home. The government's logic, if accepted by courts, would allow Congress extraordinary discretion to displace state and local regulations and to regulate—apparently without limits—private, personal conduct using the Taxing Power.

This case does not require the Court to second-guess the complex administrative decisions that Congress has already made about its policies and its methods of tax collection. There is no tax collection here. The government argues that when a taxable event occurs in a home and when monitoring that event is difficult for the government, it possesses the equivalent of a generalized police power to regulate and prohibit that taxable event. The government's argument is not just constitutionally wrong; it is dangerous.

## ARGUMENT

### I. THE GOVERNMENT'S AT-HOME DISTILLING BAN IS NOT REASONABLY RELATED TO THE COLLECTION OF TAXES.

The Constitution grants Congress the "Power to Lay and Collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the Common Defence and general Welfare of the United States." U.S. Const. art I, § 8, cl. 1. "Put simply, Congress may tax and spend." *NFIB*, 567 U.S. at 537. The government argues that the at-home distilling ban and the imposition of criminal penalties are an essential part of a federal effort to prevent tax fraud.

Although Congress's exercise of incidental powers to collect taxes receives deference, those rules must be reasonably related to the collection of taxes. *Felsenheld v. United States*, 186 U.S. 126, 134 (1902). The government relies on *Felsenheld* and a subsequent Eighth Circuit decision, *Stilinovic v. United States*, 336 F.2d 862 (8th Cir. 1964), to urge deference to its broad taxing powers. However, those cases are not analogous: Unlike the laws in those cases, a law prohibiting at-home distilling is not reasonably related to revenue collection. *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau,* No. 4:23-CV-1221-P, 2024 WL 3357841, at *17–18 (N.D. Tex. 2024).

"An elaborate system has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits." *United States v. Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955). Many of these federal rules regulate the operations of

commercial distilleries, such as rules that ensure accurate readings of "proof of gallon" (the unit used for taxation), prevent tampering with measuring gauges, and authorize government inspections at production facilities to monitor tax compliance. *See*, *e.g.*, § 5001. However, the at-home distilling ban is fundamentally distinct from these types of laws and regulations. Almost all federal liquor tax rules govern the inspection or measurement of taxed products, but the at-home distilling ban does neither. The cases the government relies on allow for the use of the Taxing Power for the inspection of beverage production and the measurement of beverage production, but not for the *prohibition* of beverage production—and not for the government's broad interpretation of the Taxing Power that prohibition would require.

### A. The Government's Reliance on *Felsenheld* Is Misplaced.

The government relies on the Supreme Court's decision in *Felsenheld,* 186 U.S. at 126, to support the constitutionality of the at-home distillery ban. Mot. to Dismiss 11. However, as the *Hobby Distillers* court correctly determined, the at-home distilling ban bears no resemblance to the law challenged in *Felsenheld*. *Hobby Distillers Ass'n,* 2024 WL 3357841 at *17. *Felsenheld* involved a tax law that prohibited "foreign articles" in tobacco pouches. 186 U.S. at 126. The law was passed in response to tobacco producers' practice of inserting prizes, "such as pen knives," into packages. *Id*. at 126–27. Eventually, federal tax officials enforced that

law by seizing hundreds of packages of tobacco from a tobacco seller because he had inserted paper coupons conferring prizes into each package. *Id*. at 127–28. The tobacco seller challenged the constitutionality of the foreign articles ban, *id*. at 127, but the Court upheld the statute as consistent with the Taxing Power. *Id*. at 134.

The government cites a vague proposition from that decision about the broad reach of Congress's taxing authority. Mot. to Dismiss 11 (citing *Felsenheld*, 186 U.S. at 132 (remarking that for manufactured goods that are taxed, "Congress may prescribe any rule or regulation which is not, in itself, unreasonable")). But the holding in *Felsenheld* is narrow. The Court merely held that "it is within the power of Congress to prescribe that a package of any article which it subjects to tax . . . shall contain only the article which is subject to the tax." *Felsenheld*, 186 U.S. at 134. In other words, tax-related enforcement provisions must be reasonably related to the protection of federal revenue. *See id*. at 131–33. There, the relation between revenue collection and the ban on foreign articles was key to the holding. That is because the vendor who adds foreign objects, like pen knives and trinkets, to taxed goods thereby complicates the assessment of the weight of those goods for tax purposes. *Id*. at 126–31.

In the case at hand, the necessary connection between revenue collection and the statute at issue is absent. Instead, the government stretches the vague language in *Felsenheld* beyond its breaking point. *See* Mot. to Dismiss 11. The function of the

foreign-articles ban is to regularize tax collection without interfering with the taxable activity, but the function of the at-home distilling ban is to eliminate both a source of tax revenue as well as the taxable activity itself. In *Felsenheld,* the law at issue left the product that was to be taxed alone. Here, however, the government bans the production of a taxable product outright. Nowhere in *Felsenheld* did the Court suggest that Congress's power to enact reasonable tax regulations includes a broader authority to prohibit the manufacture and private use of taxed goods.

### B. The Government's Reliance on *Stilinovic* Is Misplaced.

Likewise, the measure at issue in *Stilinovic* protects the collection of revenue, and the opinion that upholds this measure contains no justification for an outright ban. 336 F.2d at 862. In *Stilinovic*, the Eighth Circuit upheld a federal statute that prohibited liquor sellers, like bar owners and restaurateurs, from "plac[ing] in any liquor bottle any distilled spirits whatsoever other than those contained in such bottle at the time of stamping." *Id*. at 863 (citing § 5301(c)(1)). In that case, a bar owner was convicted under the anti-refilling statute; he challenged his conviction by arguing that Congress lacked the constitutional power to criminalize combining the contents of two partially empty bottles of taxed whiskey. *Id*. Nevertheless, the Eighth Circuit upheld the refilling ban as a constitutional exercise of the Taxing Power. *Id*. at 865.

But *Stilinovic,* like *Felsenheld,* cannot provide support for an absolute ban on home distilling. The statute in *Stilinovic* contains what the Court in *Felsenheld* characterized as "rules and regulations for the manufacture and handling of goods which are subjected to an internal revenue tax." *Felsenheld*, 186 U.S. at 132. The rule prohibits refilling distilled spirit bottles after they've been stamped "tax-paid." *Stilinovic*, 336 F.2d at 864–65. The function of the refilling ban is to make tax fraud more difficult by making the operations of commercial premises and their sales of taxed liquors more transparent to the taxing authority. The at-home distilling ban, in contrast, operates in a non-commercial, non-taxable context—production for one's personal use. Although the government argues that the at-home distilling ban prevents the concealment of tax fraud, that's only because the ban prohibits home distilling entirely. This destroy-the-village-in-order-to-save-it logic does away with tax fraud only by doing away with taxable activity completely.[7]

[7] The government's argument about revenue protection is also undermined by the extensive regulatory framework the statute places upon distillers; that framework ensures transparency and efficient revenue collection—whether or not the ban is enforced. Its provisions include (among many others) a comprehensive registration requirement for stills, § 5179; a requirement that all declarations be made under penalty of perjury and signed by the proprietor or their representative, 27 C.F.R. § 19.45; rules for authorized government inspection, § 5203; and record-keeping and reporting obligations to account for all distilled spirits produced and stored, § 5207. Such provisions ensure compliance with the federal government's collection of excise taxes on distilled spirits. In short, regardless of the outcome of this case, revenue protection will remain preserved because the statute's companion provisions remain unchallenged.

The *Hobby Distillers* decision underscores this crucial distinction. As that court noted, the laws upheld in *Felsenheld* and *Stilinovic* were rules or regulations "integrally connected to the procedures for executing the tax at issue." *Id*. at 17. In contrast, the at-home distilling ban regulates "behavior separate from the logistics of liquor taxes."[8] *Hobby Distillers Ass'n*, 2024 WL 3357841 at *19.

## II. THE FEDERAL TAXING POWER CANNOT BE USED AS A FEDERAL POLICE POWER.

Whether citizens should be able to distill spirits in the privacy of their own homes is a question of health, safety, and morals that is reserved for the states to answer—through the exercise of state-level police powers. *See Brown v. Maryland*, 25 U.S. 419, 443 (1827). Criminalizing at-home distilling under the Taxing Power cannot be reconciled with our constitutional system of limited and enumerated powers, and wrongful deployment of the Tax Power would allow Congress to circumvent the limitations of the Constitution.

[8] The government also cites to two nonbinding and similarly distinguishable cases as supporting examples: *Ripper v. United States*, 178 F. 24 (8th Cir. 1910), and *Goldstein v. Miller*, 488 F. Supp. 156 (D. Md. 1980), *aff'd*, 649 F.2d 863 (4th Cir. 1981), *aff'd sub nom. Overbrook Egg Nog Corp. v. Miller*, 649 F.2d 864 (4th Cir. 1981). Mot. to Dismiss 21. *Ripper* involved limiting retail sales of margarine to "original stamped packages, in quantities not exceeding ten pounds," 178 F. at 28, and *Goldstein* involved "the regulation of [liquor] bottle sizes," 488 F. Supp. at 170. Neither of these schemes can be reasonably analogized to the at-home distilling ban at issue here. That is because they both focus on the packaging unit of the goods, which affected the government's ability to tax commerce in them.

The Supreme Court has rejected such distortions of the Taxing Power. In *NFIB v. Sebelius,* the Court found that the scope of the Taxing Power is narrow and that it must be directed at revenue generation: "Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more." 567 U.S. 519, 574 (2012). The Court added: "If a tax is properly paid, the Government has no power to compel or punish individuals subject to it." *Id*. Particularly relevant here, the Court added that "[t]he proposition that Congress may dictate the conduct of an individual today because of prophesied future activity finds no support in our precedent." *Id*. at 557.

The government contends that banning home distilling will increase tax revenue from the commercial production of distilled spirits. *See* Mot. to Dismiss 12–13 (stating that the law is integral to the protection of tax revenue and that the diversion of revenue from the federal excise tax on distilled spirits is easier to accomplish and more costly to the government than for beer and wine). That argument is a non-starter: The Supreme Court rejected this "hydraulic theory of tax collection" in *United States v. Dewitt*, 76 U.S. 41, 44 (1869). In *Dewitt*, the government defended a ban on the sale of certain illuminating oils as an exercise of the Taxing Power because the ban would increase the price (and thus the taxes collected) on other taxable illuminating oils. *Id*. The Court first rejected the use of the government's Taxing Power for the selective ban because "no tax is imposed on

the oils the sale of which is prohibited." *Id*. That left only the government's hydraulic theory of tax collection—and, as the Court unanimously held, that power's exercise is "too remote and too uncertain to warrant us in saying that the prohibition is an appropriate and plainly adapted means for carrying into execution the power of laying and collecting taxes." *Id*.

Since the at-home distilling ban does not tax an item, as in *Dewitt*, there's no need for a Necessary and Proper analysis. As *NFIB* tells us, the statute falls outside the scope of Congress's Taxing Power. Again, "Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more." *NFIB*, 567 U.S. at 574. The distilling ban, like the illuminating oils ban, lacks any direct connection to revenue generation. It is therefore "a police regulation, relating exclusively to the internal trade of the state." *Dewitt*, 76 U.S. at 45. In short, *NFIB* forecloses this kind of use of the Taxing Power.

Congress is regularly tempted to aggrandize its power by dressing up a health or safety regulation in tax-enforcement clothing. For that reason, courts must evaluate the function of a purported tax, rather than taking a bare statement of congressional intent at face value. *See United States v. Constantine*, 296 U.S. 287, 294 (1935) ("If in reality a penalty it cannot be converted into a tax by so naming it"). That is why the Supreme Court struck down a statute that purported to tax labor when, in reality, the law had the "characteristics of regulation and punishment."

*Bailey v. Drexel Furniture Co.*, 259 U.S. 20, 38 (1922). That "tax law" was unconstitutional because it functioned as a labor regulation and intruded on powers reserved to the states. *Id*. at 39.

Similarly, an examination of the at-home distilling ban reveals its actual functions: It attempts to exercise police powers and displace state and local powers. The statute reads:

> No distilled spirits plant for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure connected with any dwelling house, or on board any vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed, or on premises where any other business is carried on . . . .

§ 5178(a)(1)(B). This statute cannot simply be categorized as a tax collection measure, in part because it selectively prohibits the activity at issue depending on whether that activity is conducted in a commercial or residential area. Indeed, this statute looks more like a zoning regulation, and zoning is a power reserved to the states and their municipalities. *See* Eugene McQuillin, *Constitutional Validity of Zoning Under the Police Power*, 11 St. Louis L. Rev. 76, 78 (1926). The zoning aspects of the ban are even more apparent in the original 1868 law that banned at-home distilling, which the government cites to emphasize the ban's long pedigree.[9] An Act Imposing Taxes on Distilled Spirits and Tobacco and for Other Purposes,

---

[9] Mot. to Dismiss 13.

§ 12, 15 Stat. 125, 130 (1868). That section of the 1868 law prohibited distilling "where liquors of any description are retailed, or where any other business is carried on, *nor within six hundred feet from any premises* authorized to be used for rectifying." *Id*. (emphasis added).

The government maintains, then, that a powerful grant of authority lurks within the Taxing Power (with some assistance from the Necessary and Proper Clause) that includes control over which products can be produced on every private parcel in America. The government has not and cannot offer any explanation of how this de facto federal police power might be limited. This Court should therefore reject the government's expansive conception of the Taxing Power.

## III. LIBERTY AND FEDERALISM ARE JEOPARDIZED IF CONGRESS CAN PROHIBIT ANY TAXABLE CONDUCT BECAUSE IT OCCURS WITHIN A HOME.

The statute's nationwide prohibition of at-home distilling, § 5178(a)(1)(B), functions as a federal preemption of zoning rules. Even if a local government were inclined to allow distilling in residences or outbuildings, those on-premises operations are criminalized by the federal government.

The government argues "that the statutory provisions at issue do not simply 'prohibit home distilling' but rather place limits on the permissible locations for production of distilled spirits." Mot. to Dismiss 14. But that defense merely restates the statute's unconstitutional purpose: the regulation of private conduct. Although

the government argues that the statute can be justified by its protection of tax revenue, the actual function of the rule is something like that of a federal police power. There is no limit to the federal government's reach if the elimination of potential tax fraud is all the justification that is needed to displace state and local police powers.

The government justifies the at-home distilling ban as necessary because diversion of tax revenue on distilled spirits—by "hiding stills or the alcohol," for example—is "easier to accomplish and more costly to the government than diverting the revenue on an equal volume of beer or wine." Mot. to Dismiss 12. The logic here is presumably that it is difficult for federal tax collection officials to assess whether distilling hobbyists are complying with federal law in the privacy of their homes. But *any* conduct in the home is similarly susceptible to concerns about tax "diversion" or "concealment." If Congress can prohibit any "concealable" taxable event *because* it occurs in the home, Congress has the power to prohibit such at-home conduct as babysitting a grandchild, growing fruits and vegetables in a garden, homeschooling children, and cooking family meals. There is no limiting principle here: our federalist system of government is in jeopardy if courts defer to Congress's decision to tax and prohibit in-home conduct—whether distilling, baking, or homeschooling—because it has "distinct" features that facilitate tax evasion.

## CONCLUSION

The government's defense of the at-home distilling ban transforms the Taxing Power into a federal police power. For the foregoing reasons, and for the reasons given by Appellant, the government does not have the constitutional authority to enact such a ban.

Respectfully submitted,

*/s/ Thomas A. Berry*

Thomas A. Berry
*Counsel of Record*
Brent Skorup
Dan Greenberg
Alexander Xenos
CATO INSTITUTE
1000 Massachusetts Ave., N.W.
Washington, DC 20001
443-254-6330
tberry@cato.org

Dated: July 1, 2025

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because it contains 3,876 words, excluding the parts exempted by Fed. R. App. P. 32(f).
2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in Times New Roman, 14-point font.

/s/ *Thomas A. Berry*

July 1, 2025

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

/s/ *Thomas A. Berry*

July 1, 2025