# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

————————————

JOHN REAM,

Plaintiff-Appellant,

v.

U.S. DEPARTMENT OF THE TREASURY, et al.,

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the Southern District of Ohio

————————————

## BRIEF FOR DEFENDANTS-APPELLEES
————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

DOMINICK S. GERACE II
  *United States Attorney*

COURTNEY L. DIXON
CAROLINE W. TAN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7236*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-4171*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUE ............................................................. 1

STATEMENT OF THE CASE ............................................................... 2

    A.    Statutory Background ........................................................2

    B.    Factual Background and Procedural History ................................5

SUMMARY OF ARGUMENT ............................................................ 11

STANDARD OF REVIEW ................................................................ 12

ARGUMENT ................................................................................. 12

I.    The District Court Correctly Held That Plaintiff Lacks Standing...... 12

    A.    Plaintiff Has Not Satisfied the Standard for Pre-Enforcement Review. ..................................................................14

        1.    Plaintiff Cannot Show a Substantial Probability that He Will Actually Engage in Proscribed Conduct..............16

        2.    Plaintiff Cannot Show a Certainly Impending Threat of Future Enforcement. ............................................23

    B.    Plaintiff's Arguments for a Different Test for Pre-Enforcement Standing Lack Merit. .................................................30

II.    This Court Should Not Reach the Constitutional Issues. ................... 36

CONCLUSION ............................................................................. 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                       **Page(s)**

*600 Marshall Ent. Concepts, LLC v. City of Memphis*,
705 F.3d 576 (6th Cir. 2013) ...................................................................... 35-36

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) ................................................................................................7

*Barber v. Charter Twp. of Springfield*,
31 F.4th 382 (6th Cir. 2022) ...................................................................... 36–37

*Carman v. Yellen*,
112 F.4th 386 (6th Cir. 2024) .......................................................................... 34

*Carney v. Adams*,
592 U.S. 53 (2020) ...................................................................................... 21, 22

*Christian Healthcare Ctrs., Inc. v. Nessel*,
117 F.4th 826 (6th Cir. 2024) .......................................................................... 36

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .............................................................................. 13, 23, 24

*Corbett v. Transportation Sec. Admin.*,
19 F.4th 478 (D.C. Cir. 2021) .......................................................................... 35

*Crawford v. U.S. Dep't of the Treasury*,
868 F.3d 438 (6th Cir. 2017) ........................... 12, 15, 23, 24, 25-26, 26, 28, 31

*Davis v. Colerain Township*,
51 F.4th 164 (6th Cir. 2022) ....................................................................... 6, 26

*Fischer v. Thomas*,
52 F.4th 303 (6th Cir. 2022) ..................................................................... 25, 28

*Food & Drug Admin. v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024) .......................................................................... 34-35, 35

*Friends of George's, Inc. v. Mulroy*,
108 F.4th 431 (6th Cir. 2024) ..................................... 14, 15, 16, 23, 30-31, 31

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*,
  740 F. Supp. 3d 509 (N.D. Tex. 2024) ...................................................... 9-10

*Hollis v. Lynch*,
  827 F.3d 436 (5th Cir. 2016), *abrogated on other grounds*
  *recognized in United States v. Diaz*,
  116 F.4th 458 (5th Cir. 2024) ........................................................... 36

*Kentucky v. Yellen*,
  54 F.4th 325 (6th Cir. 2022) ................................................................34

*Kiser v. Reitz*,
  765 F.3d 601 (6th Cir. 2014) ................................................... 19, 22, 25, 26-27

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) ..................................................... 20, 24

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................... 8, 13, 18, 28, 30, 32

*Lujan v. National Wildlife Fed'n*,
  497 U.S. 871 (1990) ..................................................................... 14

*McKay v. Federspiel*,
  823 F.3d 862 (6th Cir. 2016) ....................................................... 8-9, 9, 23, 28

*Miller v. City of Wickliffe*,
  852 F.3d 497 (6th Cir. 2017) ............................................................. 20, 26, 30

*Mosley v. Kohl's Dep't Stores, Inc.*,
  942 F.3d 752 (6th Cir. 2019) ......................................................... 22

*National Rifle Ass'n v. Magaw*,
  132 F.3d 272 (6th Cir. 1997) ............................................................. 18, 28, 32

*Online Merchs. Guild v. Cameron*,
  995 F.3d 540 (6th Cir. 2021), *abrogated on other grounds*
  *as recognized in Tennessee Conf. of the NAACP v. Lee*,
  139 F.4th 557 (6th Cir. 2025) .................................................... 19, 27

*Paxton v. Dettelbach*,
  105 F.4th 708 (5th Cir. 2024) .................................................... 18, 20

*Peoples Rights Org., Inc. v. City of Columbus,*
152 F.3d 522 (6th Cir. 1998) ........................................................ 32, 33

*Pinion v. United States,*
397 F.2d 27 (5th Cir. 1968) .............................................................. 25

*Public Lands for the People, Inc. v. U.S. Dep't of Agric.,*
697 F.3d 1192 (9th Cir. 2012) .......................................................... 35

*Raines v. Byrd,*
521 U.S. 811 (1997) ........................................................................ 12

*Sarasota Wine Mkt., LLC v. Schmitt,*
987 F.3d 1171 (8th Cir. 2021) .......................................................... 35

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ........................................................................ 13

*Steffel v. Thompson,*
415 U.S. 452 (1974) ........................................................................ 27

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ........................................ 7, 15, 19, 27, 28, 31

*Thomas More Law Ctr. v. Obama,*
651 F.3d 529 (6th Cir. 2011), *abrogated on other grounds by*
*NFIB v. Sebelius,* 567 U.S. 519 (2012) ............................................ 33

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ..................................................................... 6, 13

*United Pub. Workers of Am. (C.I.O.) v. Mitchell,*
330 U.S. 75 (1947) .......................................................................... 24

*United States v. Brookins,*
434 F.2d 41 (5th Cir. 1970) .............................................................. 25

*United States v. Goldberg,*
225 F.2d 180 (8th Cir. 1955) ........................................................ 3, 16

*United States v. Houston,*
792 F.3d 663 (6th Cir. 2015) ............................................................ 37

*United States v. Smith,*
  456 F. App'x 200 (4th Cir. 2011) .................................................... 25

*United States v. Thompson*
  361 F.3d 918 (6th Cir. 2004) ......................................................... 30

*Valley Forge Christian Coll. v. Americans United for Separation*
  *of Church & State,*
  454 U.S. 464 (1982) ....................................................................... 14

*Vonderhaar v. Village of Evendale,*
  906 F.3d 397 (6th Cir. 2018) ......................................................... 24

*Warshak v. United States,*
  532 F.3d 521 (6th Cir. 2008) ......................................................... 14

*Warth v. Seldin,*
  422 U.S. 490–99 (1975) ................................................................. 13

*Whole Woman's Health v. Jackson,*
  595 U.S. 30 (2021) ......................................................................... 14

*Zivotofsky ex rel. Zivotofsky v. Clinton,*
  566 U.S. 189 (2012) ....................................................................... 36

**U.S. Constitution:**

Art. III, § 2, cl. 1 ................................................................................ 12

**Statutes:**

Act of July 20, 1868, ch. 186, 15 Stat. 125:
  § 5, 15 Stat. at 126 ..........................................................................4
  § 12, 15 Stat. at 130 ........................................................................2
  § 14, 15 Stat. at 130-31 ...................................................................4

26 U.S.C. § 5001(a)(1) ......................................................................... 2

26 U.S.C. § 5001(b) .............................................................................. 2

26 U.S.C. § 5002(a)(1) ........................................................................... 3

26 U.S.C. § 5002(a)(10)-(11) ............................................................... 2

26 U.S.C. § 5171(c) ............................................................................... 4

26 U.S.C. § 5171(d) ........................................................................ 4, 17

26 U.S.C. § 5178(a)(1)(A) ..................................................................... 3

26 U.S.C. § 5178(a)(1)(B) ...................................................... 3, 5, 6, 16

26 U.S.C. § 5178(a)(2)(B) ..................................................................... 5

26 U.S.C. § 5178(a)(2)(C)(ii) ............................................................... 4

26 U.S.C. § 5178(b) ............................................................................... 3

26 U.S.C. § 5179 ................................................................................... 4

26 U.S.C. § 5203(b) ............................................................................... 5

26 U.S.C. § 5601(a)(1) .................................................................... 4, 19

26 U.S.C. § 5601(a)(6) ...................................... 3, 5, 6, 16, 19, 25

27 U.S.C. §§ 203–204 .................................................................... 4, 17

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1331 ................................................................................... 1

28 U.S.C. § 1346 ................................................................................... 1

**Regulations:**

27 C.F.R. § 19.73 ............................................................................... 20

27 C.F.R. § 19.74 ............................................................................... 20

27 C.F.R. § 19.75 ............................................................................... 20

27 C.F.R. § 19.76 ................................................... 20

27 C.F.R. § 19.77 ................................................... 20

27 C.F.R. § 29.55(b) ........................................... 4, 19

**Legislative Materials:**

Cong. Globe, 39th Cong., 1st Sess. 2839 (1866) ...................................................2

H.R. Rep. No. 39-24 (1867) ....................................................................................2

**STATEMENT REGARDING ORAL ARGUMENT**

The district court applied well-established principles of Article III standing to dismiss plaintiff's complaint. Although the government stands ready to present oral argument if it would be of assistance to the Court, the government does not believe that oral argument is necessary.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 1346. Compl., RE 1, PageID #2. The district court dismissed the complaint for lack of standing and entered final judgment on March 20, 2025. Op., RE 33, PageID #292; Judgment, RE 34, PageID #293. Plaintiff timely appealed on April 8, 2025. Notice, RE 35, PageID #294. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Plaintiff brings a pre-enforcement challenge to two long-standing statutory provisions regarding the placement of stills on residential premises, seeking to enjoin the federal government from enforcing those provisions against him in the future. The question presented is whether the district court properly dismissed plaintiff's complaint for lack of Article III standing because plaintiff has not shown a serious intent to engage in conduct proscribed by the challenged provisions or a credible threat of enforcement.

## STATEMENT OF THE CASE

### A.    Statutory Background

For more than a century, Congress has taxed the distillation of spirits. The tax attaches as soon as the spirits are "in existence," 26 U.S.C. § 5001(b), and the tax is assessed based on the spirit's "proof" (*i.e.*, alcohol by volume or ABV).  The higher a spirit's alcohol content, the higher its tax rate. *See id.* §§ 5001(a)(1), 5002(a)(10)–(11).

In 1868, after observing "great frauds" being perpetrated "daily" against the "collection of the internal revenue on distilled spirits," Congress passed restrictions limiting the use of stills for the distillation of spirits in certain locations associated with the concealment of distilling operations.  H.R. Rep. No. 39-24, at 1–2 (1867) (quotation marks omitted); Cong. Globe, 39th Cong., 1st Sess. 2839, 2841 (1866); Act of July 20, 1868, ch. 186, § 12, 15 Stat. 125, 130.

As codified today, the location restrictions provide that a distilled spirits plant may not be located:  (1) "in any dwelling house," (2) "in any shed, yard, or inclosure connected with any dwelling house," (3) "on board any vessel or boat," (4) "on premises where beer or wine is made or produced, or liquors of any description are retailed," or (5) "on premises

where any other business is carried on (except when authorized under subsection (b))." 26 U.S.C. § 5178(a)(1)(B).[1] These location restrictions are bookended by two provisions authorizing the Secretary to take certain steps regarding the "location," "construction," and "arrangement" of distilled spirits plants as the Secretary deems necessary to "afford adequate security to the revenue." *Id.* § 5178(a)(1)(A), (C).

Any person who "uses, or possesses with intent to use, any still, boiler, or other utensil for the purpose of producing distilled spirits" in a prohibited location is subject to a fine of up to $10,000, imprisonment of up to five years, or both. 26 U.S.C. § 5601(a)(6).

The location restriction is just one part of the "elaborate system [that] has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits," *United States v. Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955), many components of which were first enacted at the same time

---

[1] That exception permits the Secretary of the Treasury to authorize the "carrying on of" other business on the premises of a distilled spirits plant if the Secretary finds that doing so "will not jeopardize the revenue." 26 U.S.C. § 5178(b). A "distilled spirits plant" is "an establishment which is qualified under subchapter B to perform any distilled spirits operation." *Id.* § 5002(a)(1).

as the location restrictions discussed above, *see, e.g.*, Act of July 20, 1868,

§§ 5, 14, 15 Stat. at 126, 130–31.  For example, federal law requires that any

person possessing a still "shall register such still" with the government

when the still is "set up," 26 U.S.C. § 5179, *see id.* § 5601(a)(1), which is

defined by regulation to mean the still is "in position over a furnace, or

connected with a boiler so that heat may be applied," 27 C.F.R. § 29.55(b).

Individuals must also, "before commencing operations," register a distilled

spirits plant, 26 U.S.C. § 5171(c), and apply for and obtain a distilling

permit from the Department of the Treasury's Alcohol and Tobacco Tax

and Trade Bureau (the Bureau), which collects the excise tax and enforces

laws regulating the production and distribution of distilled spirits, *see* 27

U.S.C. §§ 203–204 (permit for distilling beverage spirits); 26 U.S.C. § 5171(d)

(permit for distilling other spirits); *see also* Act of July 20, 1868, §§ 5, 14, 15

Stat. at 126, 130 (requiring the same).

In addition to these requirements, Congress has also, for example,

authorized the Secretary to "order and require" "such fastenings, locks,

and seals to be part of any of the stills, tubs, pipes, tanks, and other

equipment, as he may deem necessary to facilitate inspection and afford

adequate security to the revenue," 26 U.S.C. § 5178(a)(2)(C)(ii); required

4

that distilling systems be "designed and constructed . . . as to prevent the unauthorized removal of distilled spirits before their production gauge," *id.* § 5178(a)(2)(B); and authorized internal revenue officers to enter and examine a distilled spirits plant at any time, day or night, and take inventory as necessary, *id.* § 5203(b).

## B.    Factual Background and Procedural History

**1.**  Plaintiff John Ream owns and manages a local brewery in Ohio. Compl., RE 1, PageID #5 (¶¶ 19, 20).  He has also home-brewed beer in the past.  *Id.*, PageID #4 (¶ 18).  He alleges that he "would like" to home distill alcohol for personal consumption, starting with whiskey, but "fears federal prosecution and severe criminal penalties" for violating the location restrictions in 26 U.S.C. §§ 5601(a)(6) and 5178(a)(1)(B).  *Id.*, PageID #6, 7 (¶¶ 24, 26, 30).

Plaintiff filed this pre-enforcement challenge alleging that the location restrictions exceed Congress's enumerated powers.  Compl., RE 1, PageID #7–8 (¶¶ 34–36).  He seeks a declaration to that effect and an

injunction preventing the government from enforcing the provisions against him.  *Id.*, PageID #8.[2]

Plaintiff has "never distilled alcohol before."  Compl., RE 1, PageID #6 (¶ 26).  He alleges that he has taken certain "initial" steps towards distilling—specifically, that he has "extensively researched" and "studied" the distilling process, and that he has determined that he is "prepared" to "take every step necessary" to home distill, including obtaining the relevant equipment and raw materials.  *Id.* (¶ 27).  Plaintiff has not purchased a still or any equipment or raw materials.  Nor has he applied for a permit to distill or started the process of preparing an application.

Plaintiff asserts that "but for" the location restrictions, he would home distill.  Compl., RE 1, PageID #6 (¶ 24).  He alleges that he fears

---

[2] Throughout this litigation, plaintiff's claimed injury from the challenged provisions has extended only to the restriction on the placement of distilled spirits plants "in any dwelling house."  *See* Compl., RE 1, PageID #3 (¶ 10) (quoting 26 U.S.C. §§ 5601(a)(6), 5178(a)(1)(B)); Br. 3.  Plaintiff has not purported to claim standing to challenge other aspects of that provision, nor could he do so.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek"); *Davis v. Colerain Township*, 51 F.4th 164, 171 (6th Cir. 2022) (if a plaintiff asserts a claim of injury as to "one part of a law," the plaintiff "cannot invoke that injury to challenge other parts of the law").

federal prosecution and penalties "if he simply builds or acquires a still and/or begins to distill spirits." *Id.*, PageID #7 (¶ 30).  Plaintiff has not faced, and is not currently facing, any enforcement action related to home distilling.

    **2.**  The government moved to dismiss, arguing that plaintiff lacked Article III standing and that the challenged provisions fall within Congress's enumerated powers.  Mot. to Dismiss, RE 13, PageID #1.

    The district court granted the motion and dismissed for lack of Article III standing.  Op., RE 33, PageID #292.  The court recognized that, in a pre-enforcement challenge, a plaintiff must establish injury-in-fact under the framework set out in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), and related precedents.  That framework requires a plaintiff to show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute," and the existence of "a credible threat of prosecution thereunder.'"  *Id.* at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  The court held that plaintiff here could not make either showing.

    The district court reasoned that plaintiff's mere allegation that he "would like to distill alcohol" and has "research[ed]" and "studied the

process of distilling" did not, by itself, establish a serious intent to home distill in violation of the challenged restrictions.  Op., RE 33, PageID #287–89 (quotation marks omitted).  The court recognized that plaintiff could take several additional steps to begin home distilling without violating the statutes, but that he simply had not done so.  *Id.*, PageID #288.  Plaintiff had not, for example, "bought a still" or alleged easy access to a still that could be "transported to his personal residence or modified to distill spirits."  *Id.* PageID #288–89.  And although plaintiff allegedly identified a "recipe" with ingredients that he could "easily obtain," he did not allege that he had "bought the ingredients" or "taken any added steps," such as applying for a permit or compiling the information necessary to submit such an application.  *Id.*, PageID #289.  The court further held that plaintiff's allegations amounted to no more than a "some day intention[]" that is insufficiently concrete or specific to establish an imminent injury.  *Id.*, PageID #289 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)).

The district court also held that plaintiff could not establish a credible threat of future enforcement.  Op., RE 33, PageID #289.  Applying the non-exhaustive factors identified by this Court in *McKay v. Federspiel*, 823 F.3d

862, 869 (6th Cir. 2016), and viewing the circumstances "holistically," the Court concluded that plaintiff failed to show a credible and imminent threat of prosecution. *Id.*, PageID #290–92. The court acknowledged that the government had not "disavow[ed] enforcement" of the challenged location restrictions against plaintiff, which weighed in plaintiff's favor. *Id.*, PageID #290. But, the court explained, the remaining factors identified by this Court all cut against him: plaintiff failed to establish a past history of enforcement, he had not received any enforcement warning letters, and he could not show any specific attributes of the challenged provisions that made enforcement easier or more likely, "such as a provision allowing any member of the public to initiate an enforcement action." *Id.*, PageID #289–91 (quoting *McKay*, 823 F.3d at 869).

In particular, the district court explained that plaintiff had identified "no cases showing the government has enforced § 5601(a)(6) in the past 50 years," and that plaintiff's reliance on a handful of isolated charging decisions from the 1960s were "too outdated" to establish a credible threat of prosecution today. Op., RE 33, PageID #291. The court also distinguished plaintiff's case from the facts in *Hobby Distillers Association v. Alcohol & Tobacco Tax & Trade Bureau*, 740 F. Supp. 3d 509, 519–20 (N.D.

9

Tex. 2024), in which the Northern District of Texas found standing for one plaintiff who owned a still on his residential property and had received what the district court there understood to be an enforcement warning letter related to that still, whereas plaintiff here has not purchased a still or any other equipment and has alleged no similar circumstance.[3]  Op., RE 33, PageID #291–92.

The court rejected plaintiff's argument that he did not need to show a credible threat of prosecution under the above framework so long as he alleged the statute required him to "alter [his] conduct" and "refrain[] from home distilling."  Op., RE 33, PageID #284.  The court recognized that adopting plaintiff's proposed test for pre-enforcement standing "would unlock the courthouse doors to any plaintiff who wishes to use federal courts to adjudicate their general complaints about how the government conducts its business," in contravention of the longstanding principle that "[f]ederal courts are not open forums to 'opine on legal issues in response to citizens who might roam the country in search of governmental

_____

[3]  The government has appealed the district court's decision in *Hobby Distillers*; that appeal remains pending.  *See McNutt v. U.S. Dep't of Just.*, No. 24-10760 (5th Cir.) (oral argument held August 4, 2025).

wrongdoing.'" *Id.*, PageID #284–85 (citation omitted). Because Article III does not permit judicial review merely because a plaintiff has a policy objection to a particular governmental action or believes a law is unconstitutional, the court rejected plaintiff's theory of injury on this basis. *Id.*

The district court thus dismissed plaintiff's complaint for lack of jurisdiction and did not address the merits of the constitutional challenges.

## SUMMARY OF ARGUMENT

The district court correctly held that plaintiff lacks standing to bring this challenge to the Bureau's hypothetical, future enforcement of the statutory provision governing the location of distilled spirits plants. Pre-enforcement standing is the exception, not the norm. Plaintiff cannot make the requisite showing because he has not alleged a substantial probability that he will actually engage in conduct proscribed by the challenged law, and because he has failed to allege a certainly impending threat of enforcement. Plaintiff's efforts to advocate for a different test rest on a misunderstanding of the scope of the relevant statutory provisions and law governing pre-enforcement standing. This Court should thus affirm the district court's judgment.

In all events, this Court should decline plaintiff's invitation to address the merits of the constitutional claims in the first instance, which were never addressed by the district court. To the extent this Court disagrees with the district court's decision on standing, the proper course is to reverse and remand for the district court to address the merits in the first instance.

## STANDARD OF REVIEW

This Court reviews de novo a dismissal for lack of standing. *Crawford v. U.S. Dep't of the Treasury*, 868 F.3d 438, 457 (6th Cir. 2017).

## ARGUMENT

I.   **The District Court Correctly Held That Plaintiff Lacks Standing.**

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The case-or-controversy inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was" unlawful. *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997); *see Crawford v. U.S. Dep't of the Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) (citing *Raines*). Federal courts "do not

possess a roving commission to publicly opine on every legal question" and they "do not exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Under our system of limited and separate government, a federal court may exercise jurisdiction only to resolve "a real controversy with real impact on real persons." *Id.* at 424.

"'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Under the doctrine of standing, a court must ensure that "plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quotation marks omitted). A plaintiff must show an injury in fact—an actual or imminent invasion of a legally protected interest—that is sufficiently traceable to the challenged action and is likely to be redressed by judicial relief. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The party invoking federal jurisdiction "bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

### A. Plaintiff Has Not Satisfied the Standard for Pre-Enforcement Review.

Because Article III courts are limited to "real, earnest and vital controvers[ies]" requiring immediate resolution, *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 471 (1982) (quotation marks omitted), the injury-in-fact component of Article III typically "requires that the government enforce [an] allegedly unconstitutional law against the challenging party before it has standing to sue," *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024). Pre-enforcement review is the exception, not the rule. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 49–50 (2021) (there is no "unqualified right to pre-enforcement review" and many statutory and constitutional rights "are as a practical matter asserted typically as defenses," not in "pre-enforcement cases"). A "case-by-case approach" challenging "further agency action" that "more immediately harm[s] the plaintiff" "is the traditional, and remains the normal, mode of operations of the courts." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 892–94 (1990); *see Warshak v. United States*, 532 F.3d 521, 529 (6th Cir. 2008) (en banc) (citing *National Wildlife Fed'n*, 497 U.S. at 894).

Thus, the Supreme Court and this Court "have permitted *pre-enforcement* review, but only when the plaintiff (1) alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest,' . . . that the challenged statute proscribes," and (2) "the plaintiff's intention generates a '*certainly impending*' threat of prosecution." *Mulroy*, 108 F.4th at 435 (first quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), and then quoting *Crawford*, 868 F.3d at 454). In particular, this Court has explained that "there must be a *substantial probability* that the plaintiff *actually* will engage" in the prohibited conduct. *Crawford*, 868 F.3d at 455 (second emphasis added). And "[t]he mere *possibility* of prosecution . . . does not amount to a 'credible threat' of prosecution." *Id.* at 454.

Plaintiff here does not contend that the challenged location restrictions have ever been enforced against him. Indeed, plaintiff "has never distilled alcohol before." Compl., RE 1, PageID #6. Plaintiff alleges that he would like to home distill alcohol but that he "fears federal prosecution and severe criminal penalties" if he were to do so in violation of the location restrictions, and he seeks declaratory and injunctive relief to prevent the government "from enforcing" the challenged location provisions against him in the future. *See id.*, PageID #7, 8. The district

court correctly held that plaintiff failed to establish the requirements to seek pre-enforcement review. Plaintiff has shown neither a substantial probability of actually engaging in activity prohibited by the challenged law, nor has he established a credible threat of prosecution.

### 1. Plaintiff Cannot Show a Substantial Probability that He Will Actually Engage in Proscribed Conduct.

To evaluate whether plaintiff has shown a serious intent to engage in a course of conduct arguably proscribed by law, a court must first identify what the challenged law actually proscribes. *Mulroy*, 108 F.4th at 435. As set forth above, the challenged location restrictions are part of an "elaborate system . . . to protect the revenue on distilled spirits." *United States v. Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955). Federal law restricts where a distilled spirit plant may be placed and, as relevant here, states that a distilled spirits plant may not be located "in any dwelling house." 26 U.S.C. § 5178(a)(1)(B). The statute penalizes persons who use, or possess with intent to use, a still in a prohibited location "for the purpose of producing distilled spirits." *Id.* § 5601(a)(6). These location restrictions are not a blanket restriction on distilling on residential property generally. *See id.* § 5178(a)(1)(B); *see also, e.g.*, Government Opening Brief at 11, *McNutt v.*

16

*U.S. Dep't of Just.*, No. 24-10760 (5th Cir.), Dkt. 38 (explaining in a different case challenging the same location restrictions that a "shed" on residential property "located 261 feet away" from a dwelling house "is not a prohibited location").

The district court correctly held that plaintiff's allegations fall far short of alleging a concrete intent to place a distilled spirits plant in a prohibited location for the purpose of producing distilled spirits, as proscribed by the provisions he challenges. Plaintiff, who has "never distilled alcohol before," alleges that he "would like" to begin home distilling spirits. Compl., RE 1, PageID #6. As plaintiff's complaint acknowledges, however, he has not yet acquired any of the "necessary equipment [or] raw materials" to distill alcohol, even though he concedes some of those materials could be "easily obtain[ed]." *Id.*; Decl., RE 21-1, PageID #187. Nor has he taken steps to apply for a permit to distill alcohol. *See* 26 U.S.C. § 5171(d); 27 U.S.C. §§ 203-204. [4] It is well-established that such "'some day' intentions—without any description of concrete plans, or

---

[4] Plaintiff uses the term "license" and "permit" interchangeably, in apparent reference to the requirement that distillers must obtain a permit. *See, e.g.*, Br. 10, 11, 19; 26 U.S.C. § 5171(d); 27 U.S.C. §§ 203–204. This brief uses the term "permit" consistent with the statutory terminology.

indeed even any specification of *when* that some day will be" — do not

suffice for purposes of Article III.  *See Lujan v. Defenders of Wildlife*, 504 U.S.

555, 565 (1992); *see e.g.*, *National Rifle Ass'n v. Magaw*, 132 F.3d 272, 293 (6th

Cir. 1997) ("Plaintiffs' assertions that they 'wish' or 'intend' to engage in

proscribed conduct is not sufficient to establish an injury-in-fact under

Article III."); *Paxton v. Dettelbach*, 105 F.4th 708, 714 (5th Cir. 2024) (the

plaintiffs' "professed 'some day intentions' to make a silencer, without any

concrete details concerning the type of silencer they will make or even *when*

they will make it, is insufficient to establish injury in fact").

At most, plaintiff states only that he has "extensively researched" and

"studied the process of distilling," Compl., RE 1, PageID #6, and, in a

subsequent declaration, plaintiff identified a still that he would

hypothetically like to purchase, Decl., RE 21-1, PageID #186.  But those

assertions do not differentiate plaintiff from any other member of the

public who has access to the Internet and might also allege that they have

"researched" the matter and "would" engage in prohibited conduct at

some point in the future.  Plaintiff's allegations are thus far from those at

issue in the cases that he cites, in which the plaintiffs had previously

engaged in arguably proscribed conduct and adequately alleged that it was

substantially probable, as opposed to merely speculative, that they would continue to do so in the future.  *See, e.g.*, *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 549–50 (6th Cir. 2021) (intent to "continue" engaging in arguably proscribed online sales), *abrogated on other grounds as recognized in Tennessee Conf. of the NAACP v. Lee*, 139 F.4th 557, 563 (6th Cir. 2025); *Kiser v. Reitz*, 765 F.3d 601, 608 (6th Cir. 2014) (advertised in arguably proscribed manner "in the past" and "intends to do so in the future"); Br. 26–28, 30–31, *see also, e.g.*, *Driehaus*, 573 U.S. at 161.

Plaintiff's assertion that he "has taken every possible step" that he can to home distill without violating the law, Br. 24, is plainly incorrect. Contrary to plaintiff's suggestion, federal law does not prohibit the mere purchase and possession of a still.  Federal law prohibits the possession of a still that is "not registered" and "set up," 26 U.S.C. § 5601(a)(1), which is defined by regulation to mean it is "in position over a furnace, or connected with a boiler so that heat may be applied," 27 C.F.R. § 29.55(b). And federal law prohibits possessing a still in a prohibited location "with intent to use" the still "for the purpose of producing distilled spirits."  26 U.S.C. § 5601(a)(6).  It would therefore not be unlawful, for example, for plaintiff to purchase and possess a still in a non-prohibited location.  And

19

plaintiff could apply for a permit to distill and provide the concrete and detailed specifications about his premises and intended operations, *see* 27 C.F.R. §§ 19.73–19.77, which the Bureau would evaluate in deciding whether he has satisfied the legal requirements for a distilling permit—in stark contrast to plaintiff's vague allegations in his complaint that he wishes to engage in home distilling, *see* Compl. RE 1, PageID#6; *see also Miller v. City of Wickliffe*, 852 F.3d 497, 506 (6th Cir. 2017) (plaintiffs lacked standing to challenge city ordinance where they had failed to "apply for a license to discover whether they could open their businesses").  Plaintiff offers no argument, moreover, that it would be unlawful for him to purchase or acquire any of the other equipment or ingredients necessary to distill, underscoring the minimal steps he has taken to demonstrate a concrete intent to distill in violation of the law.  *See* Br. 25-26.

Plaintiff has not applied for a permit or, at a minimum, set forth in "necessary detail" what information he would provide in a permit application to adequately allege a "sufficiently 'serious'" intent, as opposed to merely a "hypothetical" one, to operate a distilling plant in violation of the challenged law.  *See Paxton*, 105 F.4th at 713; *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) ("plaintiffs must articulate a 'concrete plan' to

violate the law in question by giving details about their future conduct, such as 'when, to whom, where, or under what circumstances' (alteration and quotations omitted)).  To the extent plaintiff suggests it is "absurd" to require that he provide detailed information about his intended premises and operations, or what security measures he plans to implement, because he "know[s]" that information already, Br. 25–26, that only underscores the point that plaintiff *could* provide more detailed information about his intended distilling operations but has not done so.

Plaintiff's reliance (Br. 25) on *Carney v. Adams*, 592 U.S. 53 (2020), underscores the error of his argument.  The Supreme Court in that case held that the plaintiff *lacked* standing to challenge the law regarding judicial appointments because the plaintiff had not applied for a judgeship and the facts did not establish that he was "'able and ready' to apply for a judgeship in the reasonably foreseeable future."  *Id.* at 63.  The Court held that the plaintiff's assertion that he "would apply," standing alone, was not sufficient to establish a concrete injury where that stated intent was "without reference to an anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations,

and without any other supporting evidence." *Id.* Similarly here, plaintiff's

stated desire to engage in "home distilling"—without any past history of

distilling spirits, without acquiring the necessary equipment or materials,

and without taking any concrete steps to apply for a permit—does not

suffice.

For similar reasons, plaintiff errs in relying on *Mosley v. Kohl's*

*Department Stores, Inc.*, 942 F.3d 752 (6th Cir. 2019), where this Court held

that a plaintiff had adequately alleged facts to "support a plausible

inference" that he would return to particular retail stores in the future

because the plaintiff had been to the stores on a previous occasion, had

provided specific dates for when he would return to the geographic area,

and asserted an intent to return to the stores in question if they were

wheelchair accessible as plaintiff alleged were required by law. *Id.* at 755–

61. This Court contrasted the plaintiff's specific allegations of "frequent

visits and concrete plans" with mere "'some day' intent[ions]" that the

Court recognized would not have been sufficient. *Id.* at 759-60; *see also, e.g.*,

*Kiser*, 765 F.3d at 608-09 (the plaintiff adequately alleged an intent to

engage in arguably proscribed conduct where he had advertised his

"services in the past," had been "warned" about the advertisement, and alleged an intent to continue advertising in the future).

### 2. Plaintiff Cannot Show a Certainly Impending Threat of Future Enforcement.

Plaintiff has also failed to demonstrate the second component of pre-enforcement standing: the existence of a credible threat of enforcement that is "*certainly impending*." *Crawford*, 868 F.3d at 454 (quoting *Clapper*, 568 U.S. at 409); *Mulroy*, 108 F.4th at 439.

**a.** This Court has identified four non-exhaustive factors that generally inform its analysis of whether there is a credible threat of prosecution sufficient to confer standing: (1) "a history of past enforcement"; (2) "enforcement warning letters sent to the plaintiffs regarding their specific conduct"; (3) "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"; and (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Mulroy*, 108 F.4th at 439 (quotation omitted); *see McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016).

All told, a plaintiff must show that the threat of enforcement is substantial. "[T]he mere *possibility* of prosecution . . . —no matter how strong the plaintiff's intent to engage in forbidden conduct may be—does not amount to a 'credible threat' of prosecution." *Crawford*, 868 F.3d at 454; *see Clapper*, 568 U.S. at 410; *Vonderhaar v. Village of Evendale*, 906 F.3d 397, 402 (6th Cir. 2018) ("speculative" "fear of an unconstitutional search" does not "permit[] a pre-enforcement action"). Likewise, "'general threat[s] by officials to enforce those laws which they are charged to administer' do not create the necessary injury in fact" absent a more particularized basis for the plaintiff to fear enforcement. *Lopez*, 630 F.3d at 787 (alteration in original) (quoting *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 88 (1947)).

**b.** Applying these factors and considering the circumstances as a whole, the district court correctly held that plaintiff could not establish a certainly impending threat of enforcement. Op., RE 33, PageID #289. Although the court believed that the government in this case had not sufficiently "disavow[ed] enforcement" of the challenged provisions, the court recognized that no other factor supports plaintiff. *Id.*, PageID #290. Indeed, plaintiff does not dispute that he has not received an enforcement

letter and that the relevant provisions do not permit enforcement by a private party.  *Id.*, PageID #289.  The district court also correctly recognized that plaintiff failed to establish any history of past enforcement that would support a credible threat of enforcement against him.  *Id.*, PageID #290–91.

In his complaint, plaintiff alleges that he fears prosecution by pointing to three cases—two of which are over 50 years old—purportedly demonstrating federal enforcement in this area.  *See* Compl., RE 1, PageID #7 (citing *United States v. Smith*, 456 F. App'x 200, 202 (4th Cir. 2011) (per curiam); *United States v. Brookins*, 434 F.2d 41 (5th Cir. 1970); *Pinion v. United States*, 397 F.2d 27 (5th Cir. 1968)).  But none of plaintiff's cited cases involved prosecutions under 26 U.S.C. § 5601(a)(6), the criminal law plaintiff challenges in this case.  Because prior enforcement is only relevant if it involves the same or "similar" conduct as what plaintiff proposes to engage in, *Fischer v. Thomas*, 52 F.4th 303, 308 (6th Cir. 2022) (per curiam); *see Kiser*, 765 F.3d at 609, plaintiff cannot assert a credible threat of prosecution under section 5601(a)(6) by pointing to a handful of decades-old cases involving other criminal provisions against other people based on other types of conduct.  *See* Op., RE 33, PageID #290; *Crawford*, 868 F.3d at

458 (no credible threat where the plaintiff did not hold enough foreign assets to trigger enforcement).

Similarly, the district court correctly rejected plaintiff's reliance in his district court briefing on an additional smattering of cases from the 1960s involving section 5601(a)(6), reasoning that these isolated decades-old examples are "too outdated" to establish a "credible and imminent threat of prosecution today." Op., RE 33, PageID #291. Plaintiff's failure to identify any federal enforcement actions under section 5601(a)(6) in the past 50 years thus makes his fear of prosecution no more than a "mere" theoretical possibility. *Crawford*, 868 F.3d at 454; *see Davis v. Colerain Township*, 51 F.4th 164, 172 (6th Cir. 2022) (no standing where the plaintiff cannot show the government "will likely apply" the challenged rule "to her in the future"). And to the extent plaintiff fears even hypothetical enforcement, all plaintiff needed to do was "apply for a" permit, which "carrie[s] no risk" and does not involve "engaging in some allegedly protected conduct and fearfully waiting for potential prosecution." *Miller*, 852 F.3d at 506.

Nor has plaintiff otherwise shown the level of targeted federal interest sufficient to establish a credible threat. For example, in *Kiser*, 765

F.3d at 609, this Court concluded a credible threat existed where the plaintiff had been repeatedly told by the regulating agency that he was already violating the law and at one point recommended that he seek legal advice.  Similarly, in *Online Merchants Guild*, 995 F.3d at 545, 551–52, this Court concluded that a credible threat existed when the plaintiffs had received a subpoena and "civil investigative demands" from the state attorney general informing the plaintiffs that they were under suspicion of violating the price-gouging laws.  The same holds true in other cases where both this Court and the Supreme Court found a credible threat of enforcement.  *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (petitioner twice instructed that unless he ceased the challenged conduct, he would be prosecuted); *Driehaus*, 573 U.S. at 164 (regulating agency found probable cause that the petitioner was violating the challenged law). That stands in sharp contrast to the circumstances here, where it is undisputed that plaintiff has not been subject to any past enforcement action or received any targeted interest from the government with respect to his interest in distilling.  *See* Op., RE 33, PageID #291.

Finally, a generic reminder on the Bureau's website that individuals must comply with the law does not amount to "past enforcement against

others" "for similar conduct." *Fischer*, 52 F.4th at 308; *see* Br. 30, 32. If that were so, then anybody who visits the Bureau's website could assert a threat of enforcement in violation of the longstanding principle that standing must be "particularized" and cannot be generally shared by any member of the public. *Lujan*, 504 U.S. at 560; *see also McKay*, 823 F.3d at 869 (signs that "address the general public, not McKay specifically," do not establish a credible threat of enforcement).

**c.** Plaintiff offers no real response to the district court's assessment of this factor. Plaintiff primarily asserts that the "mere existence" of a federal prohibition is enough to establish a credible threat of prosecution. Br. 29. But for the reasons discussed below, that broad assertion cannot be squared with precedent from the Supreme Court or this Court, which has looked to specific attributes of a statute's enforcement and not merely whether a prohibition exists. *Driehaus*, 573 U.S. at 164; *McKay*, 823 F.3d at 869; *Magaw*, 132 F.3d at 293 (the "mere 'possibility of criminal sanctions applying does not in and of itself'" confer standing). Nor does that expansive theory fit with the requirement that plaintiff must show a "*certainly impending*" threat of prosecution, not a hypothetical one. *Crawford*, 868 F.3d at 454.

To the extent plaintiff addresses the relevant factors at all, he cites a press release regarding a "joint operation" with Florida state authorities targeting "illegal production of distilled spirits." Br. 30–31. But that press release made no mention of the location of the stills—the only provisions challenged here—nor did it suggest that the arrests were related to where the individuals placed their stills. *See* Declaration of Robert M. Angelo, *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, No. 4:23-cv-01221 (N.D. Tex. Apr. 8, 2024), Dkt. No. 39-1. And, in fact, the joint operation did not result in any federal charges. *Id.* Plaintiff's reliance on a handful of press releases and news articles from 2016 and 2017—cases that involved enforcement actions against individuals who were *selling* illegally produced moonshine, something plaintiff has repeatedly stated he would not do, Compl., RE 1, PageID #6—are similarly inapposite because they involve different conduct than what is proscribed under the challenged location restrictions. Br. 30–31.

At bottom, plaintiff has not met his burden of establishing pre-enforcement standing. Plaintiff has not submitted an application to distill, started preparing such an application, or purchased any of the relevant ingredients or equipment (including those for which he alleges no fear of

prosecution).  All plaintiff alleges is some research and study, and that "*had* [he] done this or that, the [government] *might* have taken some action against [him].  This is the exact sort of hypothetical and speculative dispute that Article III proscribes from federal-court dockets."  *Miller*, 852 F.3d at 507; *see Lujan*, 504 U.S. at 575; *cf. also United States v. Thompson*, 361 F.3d 918, 922 (6th Cir. 2004) (plaintiff who failed to register his firearms should not "be permitted to hypothesize what the Secretary would do with his application, then premise his claim that the [firearms registration] statute has no rational connection to taxation on that speculation").

### B.    Plaintiff's Arguments for a Different Test for Pre-Enforcement Standing Lack Merit.

Rather than engage with the standard for pre-enforcement standing, plaintiff devotes much of his brief to arguing for a different test.  But plaintiff brought this pre-enforcement suit on the ground that he "fears federal prosecution and severe criminal penalties," and he seeks relief to prevent the federal government from enforcing the challenged provisions against him.  Compl., RE 1, PageID #6-8.  And this Court has clearly held that "*pre*-enforcement review" is available "only" when the plaintiff can make the showing set forth in *Driehaus* and related precedents.  *Mulroy*, 108

F.4th at 435.  This Court has repeatedly applied that standard when evaluating a plaintiff's standing to assert a pre-enforcement challenge.  *See, e.g.*, *id.* (citing *Driehaus*, 573 U.S. at 159); *Crawford*, 868 F.3d at 455.  In so doing, this Court has never limited this standard to circumstances when the challenged laws "do not obviously" proscribe the plaintiff's desired conduct.  Br. 15.  Such a limitation would make no sense because in *Driehaus* itself, the regulating agency had already found probable cause that the petitioner violated the challenged law.  573 U.S. at 164.

Moreover, the district court did not erroneously ignore "actual" present harm as a potential basis for standing as plaintiff contends.  Br. 13–14.  The court's opinion acknowledged that such an injury *could* suffice for standing.  *See, e.g.*, Op., RE 33, PageID #282–83.  The relevant point is that plaintiff has shown no actual present harm here, where the statute has not been enforced against him.

The district court also did not err in rejecting plaintiff's argument that he has shown an actual present injury by asserting he is "directly regulate[d]" by the challenged provisions.  Br. 21–22; Op., RE 33, PageID #284.  Because plaintiff has not alleged sufficient facts to establish an intent to actually engage in conduct prohibited by the statute, plaintiff is no more

31

directly regulated by the challenged provisions than any other "member[] of the public." *Lujan*, 504 U.S. at 575. Plaintiff's theory here thus amounts to a claim that he is injured by the mere presence of the law, but as explained, "[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs," does not establish a "case or controversy" under Article III. *Magaw*, 132 F.3d at 293 (quotation marks omitted).

Plaintiff does not advance his argument by framing his purported injury as a so-called "Hobson's choice" between compliance or prosecution. Br. 18. That argument similarly rests on plaintiff's mistaken premise that the existence of a prohibition and a mere allegation to engage in the prohibited conduct, without more, is sufficient to establish an Article III injury, but that is not the law for the reasons explained. Plaintiff relies on *Peoples Rights Organization, Inc. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998), but that case involved plaintiffs who were already engaged in conduct that had been made illegal under an intervening law—specifically, the plaintiffs possessed firearms they were required to register under the new law. *Id.* at 528–29. Accordingly, the "choice" that the plaintiffs faced was between either continuing to violate the law where the government had stated that it would prosecute violators, or to instead comply with the

law and "depriv[e]" themselves of the use and possession of their firearms. *Id.* at 529.  Plaintiff faces no such choice here:  As discussed above, he is not currently violating the law and has established no imminent intent to do so—a circumstance this Court distinguished in *Peoples Rights Organization, Inc.  See id.* at 529–30 (distinguishing cases where plaintiffs alleged only a "desire" or "wish" to engage in prohibited activities (quotation marks omitted)).

Plaintiff's reliance on *Thomas More Law Center v. Obama*, 651 F.3d 529 (6th Cir. 2011), *abrogated on other grounds by NFIB v. Sebelius*, 567 U.S. 519 (2012), is likewise unavailing.  In that case, this Court held that the plaintiffs had standing to challenge the individual-mandate requirement of the Affordable Care Act because the imminent requirement to incur certain financial expenses—to "buy medical insurance on the private market"—caused the plaintiffs to adjust their "present" spending and saving habits. *Id.* at 536.  In contrast, the location restrictions that plaintiff challenges do not compel financial participation by individuals who are otherwise unwilling to participate in a particular market, and plaintiff's inaction here would not violate the law.  The provisions plaintiff challenges do not compel him to incur any costs, nor do they impose current regulatory

requirements on him such that he must adjust his financial expenses in an analogous manner. Instead, the law merely regulates the manner in which individuals who *choose* to undertake a taxable activity go about doing so. For similar reasons, plaintiff's discussion of compliance costs is irrelevant as plaintiff has not incurred any such costs from regulatory requirements imposed by the challenged restrictions. Br. 15 (citing *Kentucky v. Yellen*, 54 F.4th 325, 340–42 (6th Cir. 2022)).

Finally, plaintiff's reliance on direct-regulation cases only underscores his inability to show an actual injury in this case. *See* Br. 17–18. For example, plaintiff cites *Carman v. Yellen*, 112 F.4th 386 (6th Cir. 2024), but in that case, the plaintiffs were already engaged in the regulated activity and could thus demonstrate how an intervening change in the law concretely affected their ability to continue their desired activity. *See id.* at 392 (change in statutory definition of "cash" to include cryptocurrency affected the obligations of the plaintiffs, who were already transacting in cryptocurrency). Plaintiff offers no explanation for how he can be the "object" of a law that governs activity he has never engaged in and has not shown a serious intent to engage in. *See* Compl., RE 1, PageID #6 (¶ 27). Moreover, although plaintiff cites *Food & Drug Administration v. Alliance for*

*Hippocratic Medicine*, 602 U.S. 367, 372 (2024), he fails to engage with the

Supreme Court's holding in that case that the plaintiffs *lacked* standing

because they were challenging an agency regulation that did not apply to

them. *See id.* at 385–86 (regulation concerned a drug that the plaintiffs did

not use or prescribe).

Plaintiff's reliance on other cases, most of which are out-of-circuit,

similarly fares no better. As in *Carman*, several involved challenges to

recent changes in the law that directly affected the plaintiffs' preexisting

activities. *See, e.g.*, *Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171, 1176–

77 (8th Cir. 2021) (intervening change in state law regarding wine

shipments affected sales of out-of-state wine retailer and purchases of in-

state wine consumers); *Public Lands for the People, Inc. v. U.S. Dep't of Agric.*,

697 F.3d 1192, 1196 (9th Cir. 2012) (intervening agency regulation affected

the plaintiffs-miners' preexisting access to certain mining claims); *Corbett v.

Transportation Sec. Admin.*, 19 F.4th 478, 483 (D.C. Cir. 2021) (intervening

change in federal in-flight mask directives affected conduct of frequent

flyer with imminent intent to keep flying). And the other cases arose

outside of the pre-enforcement context, where the plaintiffs had actually

applied for a permit that was either denied or revoked. *See, e.g., 600*

*Marshall Ent. Concepts, LLC v. City of Memphis*, 705 F.3d 576, 580–81 (6th Cir. 2013); *Hollis v. Lynch*, 827 F.3d 436, 440 (5th Cir. 2016), *abrogated on other grounds as recognized in United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024).

## II.     This Court Should Not Reach the Constitutional Issues.

For these reasons, this Court should affirm the district court's dismissal for lack of jurisdiction.  In all events, this Court should decline plaintiff's invitation to address the merits of the constitutional claims in the first instance.  This Court is a "court of review, not first view," and it thus "generally cannot consider an issue not passed on below."  *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 856–57 (6th Cir. 2024).

To the extent the Court disagrees with the district court's conclusion on standing, it should follow the usual course and remand for the district court to address the remaining issues in the first instance.  *See Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 201–02 (2012) ("[W]hen we reverse on a threshold question, we typically remand for resolution of any claims the lower courts' error [on the threshold issue] prevented them from addressing."); *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 387 (6th Cir. 2022) (reviewing only justiciability issues and "not whether [the plaintiff's] claims will otherwise succeed on the merits" because the district court had

not reached the merits); *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015) (taking that route even though the Court recognized it was "capable" of deciding the issue itself in light of its "usual practice of awaiting a decision below").  Plaintiff identifies no reason for why that usual course should not be followed here.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
DOMINICK S. GERACE II
*United States Attorney*

COURTNEY L. DIXON

*s/ Caroline Tan*

CAROLINE W. TAN
*Attorneys, Appellate Staff*
*Civil Division, Room 7236*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-4171*
*Caroline.Tan@usdoj.gov*

August 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,681 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*s/ Caroline Tan*
Caroline W. Tan

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the Sixth Circuit by using the appellate CM/ECF system.

Service will be accomplished by the appellate CM/ECF system.

*s/ Caroline Tan*
Caroline W. Tan

# DESIGNATION OF RELEVANT
# DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i), the government

designates the following district court documents as relevant:

| Record Entry | Description | Page ID # Range |
|---|---|---|
| RE 1 | Complaint | 1-9 |
| RE 13 | Government's Motion to Dismiss and Brief in Support | 66–93 |
| RE 20 | Plaintiff's Combined Cross-Motion for Summary Judgment and Opposition to Defendant's Motion to Dismiss | 109–140 |
| RE 20-1 | Exhibit A to Plaintiff's Cross-Motion | 142–145 |
| RE 21 | Plaintiff's Combined Cross-Motion for Summary Judgment and Opposition to Defendant's Motion to Dismiss | 151–182 |
| RE 21-1 | Exhibit A to Plaintiff's Cross-Motion | 184–187 |
| RE 27 | Government's Reply Memorandum in Support of Motion to Dismiss and Opposition to Plaintiff's Motion for Summary Judgment | 198–225 |
| RE 28 | Government's Reply Memorandum in Support of Motion to Dismiss and Opposition to Plaintiff's Motion for Summary Judgment | 226–253 |

| RE 31 | Plaintiff's Reply Brief in Support of Cross-Motion for Summary Judgment | 258–274 |
|---|---|---|
| RE 33 | District Court Opinion and Order Granting Government's Motion to Dismiss and Denying Plaintiff's Cross-Motion for Summary Judgment as Moot | 278–292 |
| RE 34 | Final Judgment | 293 |
| RE 35 | Notice of Appeal | 294–295 |

# ADDENDUM

# TABLE OF CONTENTS

26 U.S.C. § 5178.................................................................. A1

26 U.S.C. § 5601(a)(6) ........................................................ A3

**26 U.S.C. § 5178**

## § 5178. Premises of distilled spirits plants

(a) Location, construction, and arrangement

  (1) General

    (A) The premises of a distilled spirits plant shall be as described in the application required by section 5171(c). The Secretary shall prescribe such regulations relating to the location, construction, arrangement, and protection of distilled spirits plants as he deems necessary to facilitate inspection and afford adequate security to the revenue.

    (B) No distilled spirits plant for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure connected with any dwelling house, or on board any vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed, or on premises where any other business is carried on (except when authorized under subsection (b)).

    (C) Notwithstanding any other provision of this chapter relating to distilled spirits plants the Secretary may approve the location, construction, arrangement, and method of operation of any establishment which was qualified to operate on the date preceding the effective date of this section if he deems that such location, construction, arrangement, and method of operation will afford adequate security to the revenue.

  (2) Production operations

    (A) Any person establishing a distilled spirits plant may, as described in his application for registration, produce distilled spirits from any source or substance.

    (B) The distilling system shall be continuous and shall be so designed and constructed and so connected as to prevent the unauthorized removal of distilled spirits before their production gauge.

    (C) The Secretary is authorized to order and require—

(i) such identification of, changes of, and additions to, distilling apparatus, connecting pipes, pumps, tanks, and any machinery connected with or used in or on the premises, and

(ii) such fastenings, locks, and seals to be part of any of the stills, tubs, pipes, tanks, and other equipment, as he may deem necessary to facilitate inspection and afford adequate security to the revenue.

(3) Warehousing operations

(A) Any person establishing a distilled spirits plant for the production of distilled spirits may, as described in the application for registration, warehouse bulk distilled spirits on the bonded premises of such plant.

(B) Distilled spirits plants for the bonded warehousing of bulk distilled spirits elsewhere than as described in subparagraph (A) may be established at the discretion of the Secretary by proprietors referred to in subparagraph (A) or by other persons under such regulations as the Secretary shall prescribe.

(4) Processing operations

Any person establishing a distilled spirits plant may, as described in the application for registration, process distilled spirits on the bonded premises of such plant.

(b) Use of premises for other businesses

The Secretary may authorize the carrying on of such other businesses (not specifically prohibited by section 5601(a)(6)) on premises of distilled spirits plants, as he finds will not jeopardize the revenue. Such other businesses shall not be carried on until an application to carry on such business has been made to and approved by the Secretary.

(c) Cross references

(1) For provisions authorizing the Secretary to require installation of meters, tanks, and other apparatus, see section 5552.

(2) For penalty for distilling on prohibited premises, see section 5601(a)(6).

(3) For provisions relating to the bottling of distilled spirits labeled as alcohol, see section 5235.

(4) For provisions relating to the unauthorized use of distilled spirits in any manufacturing process, see section 5601(a)(9).

**26 U.S.C. § 5601**

**§ 5601. Criminal penalties**

(a) Offenses

Any person who—

. . .

(6) Distilling on prohibited premises

uses, or possesses with intent to use, any still, boiler, or other utensil for the purpose of producing distilled spirits, or aids or assists therein, or causes or procures the same to be done, in any dwelling house, or in any shed, yard, or inclosure connected with such dwelling house (except as authorized under section 5178(a)(1)(C)), or on board any vessel or boat, or on any premises where beer or wine is made or produced, or where liquors of any description are retailed, or on premises where any other business is carried on (except when authorized under section 5178(b));

. . .

shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense.